No. 71,404

STATE OF KANSAS, *Appellant,* v. DANIEL W. ANDERSON, *Appellee.*

No. 71,994

STATE OF KANSAS, *Appellant,* v. SARAH L. HUFFMAN, *Appellee.*

(910 P.2d 180)

Opinion filed January 26, 1996.

*Sara Welch,* assistant district attorney, argued the cause, and *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the briefs for appellant.

*John P. Gerstle,* of Gerstle & Reed, of Overland Park, argued the cause and was on the brief for appellee Daniel W. Anderson.

*Reid T. Nelson,* assistant appellate defender, argued the cause, and *Rebecca E. Woodman,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, were on the brief for appellee Sara L. Huffman.

The opinion of the court was delivered by

MCFARLAND, C.J.: The driver and the owner/passenger of a Mercedes automobile were charged with a variety of drug offenses after the vehicle was searched following the arrest of the driver on an unrelated matter. The district court held that the search was improper and suppressed the seized evidence. The State appealed

therefrom pursuant to K.S.A. 22-3603. The Court of Appeals affirmed the district court in two unpublished opinions: *State v. Anderson*, No. 71,404, and *State v. Huffman*, No. 71,994, both filed April 21, 1995. We granted the State's petitions for review, and the cases have been consolidated before us.

The undisputed facts may be summarized as follows. On October 26, 1993, at approximately 6:15 a.m., Lee Williams, an Overland Park police officer, was running radar near 61st and Metcalf. Officer Williams observed a Mercedes make an unsafe lane change which nearly resulted in a collision with a van. The officer stopped the Mercedes and approached the driver's side. The driver was a woman, and the individual in the passenger seat was a man. An infant was asleep on the back seat. The officer asked to see the woman's driver's license and a plastic film container he saw in the vehicle. Both were provided to him. The officer is uncertain as to which request was made first. The officer wanted to inspect the container, as he knew illicit drugs were often transported in such containers. There was nothing in the plastic film container. The officer then obtained identification from the passenger, who advised that he was the owner of the vehicle, and returned to the police car. A records check revealed nothing as to the passenger, Daniel Anderson. The check on the driver, Sarah Huffman, revealed: (1) The license she provided had been suspended, and (2) there was an outstanding warrant for her arrest in connection with a charge of operating a vehicle with "no child restraint."

Upon the arrival of his backup unit, Officer Williams returned to the Mercedes, asked Huffman to step out of the vehicle, arrested her for driving on a suspended license and on the warrant, handcuffed her, walked her back to his vehicle, and placed her in the back seat, from which she could not exit. Huffman was not searched. Officer Williams desired to search the Mercedes. For this purpose, he and his backup, Officer John Sanders, approached the vehicle. Anderson was asked to step out of the vehicle to facilitate the search. In the glove compartment, Williams found a modified test tube with a residue in it. The officer's experience and training led him to believe this was a crack pipe. Based on finding the crack pipe, the officer took the keys from the ignition and

opened the trunk. Inside, the officer observed an assortment of plastic bags, chemicals, scales, and other items. The officer recognized these as ingredients used in the operation of a methamphetamine laboratory. Anderson was then arrested. When Anderson was booked into jail, a motel room key was found. The execution of a search warrant at the motel room revealed a virtual cornucopia of illicit drug-related items. Specific descriptions of the items seized from the trunk and the motel room and the conduct of such searches are irrelevant to this appeal.

The issues herein stand or fall on Officer Williams' right to search the interior of the Mercedes. The seizures of the evidence from the trunk and the motel room flow from the discovery of the crack pipe in the glove compartment. The parties are in agreement that we need concern ourselves only with the facts relevant to the seizure of this item of evidence to resolve the issues herein.

Before proceeding, the applicable standards of review should be stated.

If the findings of the trial court on a motion to suppress evidence are based on substantial evidence, this court on review will not substitute its view of the evidence for that of the trial court. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979). When the facts material to a decision of the court on a motion to suppress evidence are not in dispute, the question of whether to suppress becomes a question of law. *State v. Vandiver*, 19 Kan. App. 2d 786, 788, 876 P.2d 205 (1994), *aff'd* 257 Kan. 53, 891 P.2d 350 (1995). An appellate court's scope of review on questions of law is unlimited. *State v. Heffelman*, 256 Kan. 384, 386, 886 P.2d 823 (1994). Further, on a motion to suppress evidence, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. *State v. Damm*, 246 Kan. 220, 222, 787 P.2d 1185 (1990) (citing *Mincey v. Arizona*, 437 U.S. 385, 390-91, 57 L. Ed. 2d 290, 98 S. Ct. 2408 [1978]).

The only evidence presented relative to pertinent events was the testimony of Officer Williams. No material facts are in dispute. Thus, the issue is whether the search was lawful under the undisputed facts herein. This is a question of law, and our scope of review is unlimited.

A vast body of law has developed in the general category of "search and seizure" under the United States Constitution. Many different aspects of the general subject are included therein. Failure to state the precise aspect of search and seizure law that is involved in the issue to be determined before getting into the law of search and seizure may be likened to attempting to drink from a fire hydrant.

In the case before us, an extremely narrow issue is involved. The search of the vehicle was *purely and solely* a search incident to arrest. There is no evidence of or claim made that probable cause was present for the search.

K.S.A. 22-2501 sets forth the circumstances under which a search incident to arrest may be made as follows:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of
(a) Protecting the officer from attack;
(b) Preventing the person from escaping; or
(c) Discovering the fruits, instrumentalities, or evidence of the crime."

Officer Williams testified that neither defendant exhibited any hostility and that each cooperated with his requests. Candidly, the officer stated he was not fearful that he would be attacked, that either individual was armed, or that a weapon might be in the vehicle. The officer's conduct was consistent with his lack of concern for his personal safety. At the time of the search of the vehicle, the woman arrested was in handcuffs in the back seat of a police car. There was no way she could leave the back seat on her own initiative. The woman had been arrested for driving on a suspended license and on the "no child restraint" traffic warrant. The searching officer did not claim he was looking for "fruits, instrumentalities, or evidence" of either crime or for any evidence relative to the unsafe driving he had observed. The officer was looking for illicit drugs and drug-related items when he searched the vehicle. Clearly, the district court was correct when it held that the search was not conducted for any of the purposes set forth in K.S.A. 22-2501. It must be stressed that there is no claim that the search was made under the plain view doctrine, that the officer had probable

cause to search the vehicle, or that the search occurred for any reason other than as an incident to arrest. The officer smelled no marijuana smoke, observed no green leafy material, and had no probable cause for believing drugs or drug paraphernalia were present in the vehicle.

Notwithstanding these facts, the State claims the search was valid solely as an incident to the arrest of Huffman and that K.S.A. 22-2501 governs and permits the search herein. The State reasons as follows: When K.S.A. 22-2501 was enacted in 1970, it codified existing federal law relative to constitutionally permissible searches incident to arrest as enunciated in *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 895 S. Ct. 2034, *reh. denied* 396 U.S. 869 (1969).

In *Chimel*, the officer had a warrant for defendant's arrest for the burglary of a coin shop. The officers went to Chimel's home to arrest him. They asked for permission to "look around." Chimel objected, but the police searched the entire home, including the attic, garage, and workshop, and seized various items which were introduced as evidence.

The *Chimel* Court considered whether the warrantless search of Chimel's entire house could be constitutionally justified as incident to his lawful arrest. 395 U.S. at 755. Concluding that it could not, the Court held:

"Application of sound Fourth Amendment principles to the facts of this case produces a clear result. The search here went far beyond [Chimel's] person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area. The scope of the search was, therefore, 'unreasonable' under the Fourth and Fourteenth Amendments, and [Chimel's] conviction cannot stand." 395 U.S. at 768.

In reaching this conclusion, *Chimel* overruled earlier cases which had allowed the scope of warrantless searches to extend to the area that is considered to be in the "possession" or under the "control" of the person arrested. The Court believed that scope was too broad for constitutional protection. 395 U.S. at 760, 768. Although

the rationale in these earlier cases would have allowed the search of Chimel's home, the Court believed that

"[n]o consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items. The only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and the more extensive searches on the other." 395 U.S. at 766.

Further, the Court noted that "[t]here is ample justification . . . for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which [the suspect] might gain possession of a weapon or destructible evidence." 395 U.S. at 763. *Chimel* is primarily concerned with the scope of a search made incident to an arrest. There is no issue in the case before us relative to the scope of the search.

The State's reasoning appears to be that when the United States Supreme Court decided *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981), the decision somehow altered the requirements of K.S.A. 22-2501, or should be considered as supplemental thereto, and that *Belton* legitimizes the search herein, which was not in accordance with the statute.

In *Belton*, a law enforcement officer stopped a speeding automobile. There were four occupants in the automobile, one of whom was Belton. In the course of checking the driver's license and registration, the officer discovered that none of the men owned the car or was related to the owner. Meanwhile, the officer had smelled burnt marijuana and had seen an envelope he believed to contain marijuana lying on the floor of the vehicle. Believing the four occupants were in possession of marijuana, the officer ordered all of them out of the car and placed them under arrest. The four were separated and searched. The passenger compartment of the vehicle was also searched. In the course of that search, cocaine was discovered in a zipped pocket of Belton's jacket lying on the back seat. Belton argued that the seized materials should be suppressed.

The Court characterized the question before it in *Belton* as: "When the occupant of an automobile is subjected to a lawful cus-

todial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he was riding?" 453 U.S. at 455. *Belton* held that it does. 453 U.S. at 460.

The Court held that

"when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." 453 U.S. at 460 (citing *United States v. Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 [1973]).

However, the *Belton* Court provided a footnote here, indicating that this holding did not change *Chimel*'s principles. That footnote is as follows: "Our holding today does no more than determine the meaning of *Chimel*'s principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." 453 U.S. at 460 n.3.

Much has been written as to how bright the "bright line" rule said to be established by *Belton* actually is and how *Belton* and *Chimel* fit together. For our purposes, however, we need not discuss the federal law further. *Chimel* and *Belton* involve issues of whether the search was unreasonable under the Fourth Amendment to the United States Constitution. In Kansas, we have a statute that sets forth the permissible circumstances and purposes under which a search incident to an arrest can be made. The statute may possibly be more restrictive than prevailing case law on the Fourth Amendment would permit, but this does not alter the plain language of the statute. For convenience, K.S.A. 22-2501 is repeated:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

(a) Protecting the officer from attack;

(b) Preventing the person from escaping; or

(c) Discovering the fruits, instrumentalities, or evidence of the crime."

Under the State's interpretation, the statute should be considered to end with the word "presence" and read:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence."

We find no legal basis for such a statutory modification. *Belton* may expand the scope of the constitutionally permissible search of a vehicle but not the permissible purpose of the search. Be this as it may, the language employed in the statute controls the issue herein.

The State further argues that Kansas case law has already approved of searches such as the one before us. In support thereof the State cites *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983); *State v. White*, 230 Kan. 679, 640 P.2d 1231 (1982); *State v. Van Wey*, 18 Kan. App. 2d 260, 850 P.2d 283 (1993); and *State v. Press*, 9 Kan. App. 2d 589, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984). These cases do not support the proposition.

In *State v. Press*, 9 Kan. App. 2d 589, the defendant had been arrested for DUI and the officer was searching the defendant's vehicle for a bottle when marijuana was found. In *State v. White*, 230 Kan. 679, defendant was a robbery suspect who was arrested after a high speed chase. A jacket, cap, and cash scattered about the car in plain view were seized. In *State v. Deskins*, 234 Kan. 529, the primary issue was the propriety of the stop of the defendant during a driver's license check. After Deskins failed certain field tests, he was arrested for DUI and, when his vehicle was searched, marijuana was found in the glove compartment. There was no issue challenging the search per se, and the court stated: "The arrest of the defendant being lawful, the search of the passenger compartment of his automobile was also lawful. *State v. White*, 230 Kan. 679, 640 P.2d 1231 (1982)." 234 Kan. at 543. Presumably, the officer was looking for a bottle, as in *Press*, although this was not discussed as it was not an issue. The search of defendant's vehicle in *State v. Van Wey*, 18 Kan. App. 2d 260, was held improper as being too remote from the place of his arrest. None of these cases stands for the proposition that a search solely

as an incident to arrest may be for some purpose other than one or more of those contained in K.S.A. 22-2501.

## Conclusion

The sole basis on which the State urges that the search herein was valid is that it was a search incident to a lawful arrest. The State concedes such searches are controlled by K.S.A. 22-2501. The statute sets out three purposes for which said searches may be made, and a search wholly under the statute must be for one of the purposes set forth therein. By the searching officer's own testimony, none of the three statutory purposes was his purpose in conducting the search. The burden is on the State to prove the search was lawful. This it has failed to do. We find no error in the district court's determination that the search and seizure of the crack pipe from the glove compartment was unlawful under K.S.A. 22-2501 and that the evidence must be suppressed.

The judgments of the Court of Appeals affirming the judgments of the district court are affirmed. The judgments of the district court are affirmed.