894 So.2d 1055 (2005)
STATE of Florida, Appellant,
v.
Marquand GILBERT, Appellee.
No. 1D03-4920.
District Court of Appeal of Florida, First District.
February 2, 2005.
Charles J. Crist, Jr., Attorney General, and Edward C. Hill, Jr., Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellant.
Nancy A. Daniels, Public Defender, and David P. Gauldin, Assistant Public Defender, Tallahassee, for Appellee.
*1056 PADOVANO, J.
The issue in this appeal is whether a police officer may search a vehicle incident to the arrest of a passenger on a civil writ of attachment. Because the need to ensure the safety of the officer is the same regardless of the reason for taking the arrestee into custody, we conclude that a search incident to an arrest on a civil warrant is permissible, and that it must be evaluated by the same principles that justify a search incident to an arrest on a criminal warrant.
Marquand Gilbert, the defendant, was driving his vehicle with a passenger in the front seat, when two police officers pulled him over for an inoperable tag light. Neither officer suspected any criminal activity on the part of the defendant or his passenger at this point. One of the officers approached the passenger to write him a citation for not wearing his seat belt. The officer soon discovered that the passenger had outstanding warrants in the form of writs of attachment for failure to pay child support, and he placed the passenger under arrest.
Meanwhile, the other officer approached the driver's side of the vehicle and took the defendant's driver's license in order to write him a citation for the broken tag light. The officer asked the defendant if there was anything illegal in the car, and the defendant told him he had a gun under the seat. At that point, the officer removed the defendant from the car, handcuffed him, and placed him in the back of the patrol car. The officer found the gun under the driver's side seat, and the defendant was later charged with possession of a concealed firearm.
The defendant moved to suppress the gun as the fruit of an illegal search. He argued that the search was illegal because he was not given his Miranda warnings before being asked if there was anything illegal in the car. The State countered that the officers had the authority to search the vehicle by virtue of the arrest warrant for the passenger. Additionally, the State argued that the gun was admissible because it would inevitably have been discovered.
The trial court concluded that the warrantless search of the vehicle was improper and granted the defendant's motion to suppress the gun from evidence. In support of the suppression order, the trial court found that the arrest of the passenger on a civil writ of attachment did not give the officers a reasonable suspicion to search the car, and that the defendant's admission was made in a custodial interrogation before he had been advised of his rights. The court reasoned that the defendant was in custody when he told the officers about the gun, because the officers had possession of his driver's license. The State filed a timely appeal in this court.
We conclude that the arrest of the passenger provided an independent ground for searching the vehicle. Consequently, we need not determine whether the search could be properly based on the information the defendant provided in his statement to the officer. The trial court concentrated on the fact that the passenger was arrested on a civil writ of attachment and concluded that such an arrest fails to create a suspicion of criminal activity justifying the search of a vehicle. However, this analysis confuses a search incident to an arrest with a search based on reasonable suspicion. These are distinct grounds for conducting a search.
When an occupant of a vehicle is arrested, the police may search the vehicle. See New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The authority for a vehicle search incident to an arrest does not depend on a reasonable *1057 suspicion of criminal activity or probable cause. It is instead a bright-line rule arising from the very fact of the arrest itself, regardless of whether the officers had a reasonable suspicion of criminal activity. See Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). This rule is based on the need to remove any weapons and to preserve any evidence that might be in the vehicle. See Belton, 453 U.S. at 461-62, 101 S.Ct. 2860; Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
Nor does the authority to conduct a search incident to an arrest depend on the trial court's subsequent determination that it was likely that weapons or evidence would actually be found in the car. As long as the arrest itself is lawful, no additional justification is required for a search incident to the arrest. See Belton, 453 U.S. at 461-62, 101 S.Ct. 2860; U.S. v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The rule is triggered by the dangers that can be involved in taking a person into custody, and these dangers spring from the fact of the arrest and its attendant uncertainties, not from the grounds for the arrest. See Knowles, 525 U.S. at 117-118, 119 S.Ct. 484; Robinson, 414 U.S. at 234, n. 5, 94 S.Ct. 467. In the present case, the trial court apparently conflated two different justifications for conducting a vehicle search, erroneously concluding that a reasonable suspicion of criminal activity was required to conduct a search incident to an arrest.
The defendant argues in defense of the suppression order that the purpose of a writ of attachment is not to punish the person who is the subject of the writ or to arrest him criminally, but to preserve his constitutional rights by providing a prompt hearing on his ability to purge the arrears. See Amendments to Florida Family Law Rules of Procedure, 723 So.2d 208, 212-214 (Fla.1998). Therefore, he maintains that the non-criminal arrest of the passenger did not trigger the Fourth Amendment exception for search incident to arrest. But, in our view, this argument makes an academic distinction without a practical difference.
A person who is taken into custody on a civil writ of attachment is deprived of his physical freedom of movement in exactly the same way as a suspect taken into custody on a criminal warrant. From the officer's point of view, the procedure for serving a writ of attachment is no different from any other kind of arrest, and, from the arrestee's point of view, the consequences are also the same. The arrestee is deprived of his liberty, and, just as in a criminal case, the contempt charge leading to the issuance of the writ could result in a continued deprivation of liberty. See Department of Revenue v. Meade, 827 So.2d 1093, 1094 (Fla. 2d DCA 2002). It follows that the justification for searching a vehicle incident to an arrest for a criminal offense applies with the same force to an arrest on a civil writ.
In the present case, the passenger was clearly under arrest because he was deprived of his liberty by being taken into custody to answer to the contempt charges. Therefore, the bright-line rule in Belton was triggered, and the police had absolute authority to conduct a search incident to the arrest. Hence, we conclude that the trial court erred in reasoning that the civil nature of the underlying warrant negated or otherwise affected this authority.
Because the authority to conduct a search incident to an arrest was a valid independent ground for searching the vehicle, the officer's failure to advise the defendant of his constitutional rights has *1058 no bearing on the admissibility of the firearm found in the vehicle. The officers would have inevitably discovered the gun when they searched the vehicle incident to the passenger's arrest. See Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); Craig v. State, 510 So.2d 857, 862-64 (Fla.1987).
For these reasons, we conclude that the search of the vehicle did not violate the defendant's constitutional rights. It follows that the evidence found in the course of the search should not have been suppressed on constitutional grounds.
Reversed.
BENTON and HAWKES, JJ., concur.