(171 P.3d 660)
No. 98,118
No. 98,119

STATE OF KANSAS, *Appellant*, v. RANDY HENNING, *Appellee*, and KELLY ZABRISKIE, *Appellee*.

Opinion filed November 30, 2007.

*Timothy Dupree*, assistant county attorney, *Marc Goodman*, county attorney, and *Paul J. Morrison*, attorney general, for appellant.

*Don W. Lill*, of Emporia, for appellee Randy Henning.

*Monte L. Miller*, of Monte L. Miller, Chtd., of Emporia, for appellee Kelly Zabriskie.

Before MARQUARDT, P.J., BUSER, J., and LARSON, S.J.

LARSON, J.: This is the State's appeal from the district court's suppression of evidence seized during the search of a vehicle incident to a lawful arrest on July 6, 2006.

The first impression issue in Kansas in this appeal involves the interpretation of the 2006 amendment in K.S.A. 2006 Supp. 22-2501(c) to allow law enforcement officers making a lawful arrest to reasonably search the person arrested and the area within such person's immediate presence for the purpose of discovering the fruits, instrumentalities, or evidence of *a* crime rather than *the* crime.

The facts in this case are not controverted and show the following scenario and proceedings in the cases before us on appeal.

On the morning of July 6, 2006, Deputy Patrick Stevenson was entering a convenience store in Emporia when he noticed Randy Henning walking out of the store. Stevenson knew Henning from a previous incident and remembered Henning's name had been on an outstanding arrest warrant list. Stevenson immediately called dispatch and verified there was an outstanding arrest warrant for Henning for a traffic violation.

Stevenson testified that by the time he verified Henning's outstanding arrest warrant, Henning had entered the front passenger side of a car. Kelly Zabriskie was in the driver's seat of the car. The car was registered to Henning.

Stevenson called to Henning and asked to speak to him. Henning got out of the car, and Stevenson asked Henning for his date of birth. Stevenson relayed this information to dispatch and verified Henning was the person named in the arrest warrant. Stevenson told Henning he was under arrest and handcuffed him.

Stevenson proceeded to search Henning's car. Stevenson testified that he searched Henning's car as a search incident to arrest under K.S.A. 2006 Supp. 22-2501. Stevenson noted that he knew 22-2501 had been amended effective July 1, 2006, to allow him to search for fruits of a crime in a car where an arrestee had been. During his testimony at preliminary hearing, Stevenson indicated that he was not searching for evidence of a particular crime during his search of Henning's car; rather, he was searching for evidence of any crime. During the search of Henning's car, Stevenson dis-

covered a fabric flashlight holder inside the center console. Inside the fabric holder was a syringe and a glass pipe with residue. Later testing detected amphetamine inside the pipe. Although Henning denied that the items were his, Henning told Stevenson that he would say the items belonged to him to get Zabriskie out of trouble. After Stevenson discovered the items inside the car, he placed Zabriskie under arrest for possession of drug paraphernalia.

Henning and Zabriskie were separately charged with possession of amphetamine in violation of K.S.A. 2006 Supp. 65-4160 and possession of drug paraphernalia in violation of K.S.A. 2006 Supp. 65-4152. Both Henning and Zabriskie moved to suppress the evidence seized by Stevenson.

Henning argued that in order to search a car incident to arrest under K.S.A. 2006 Supp. 22-2501(c), an officer must have reasonable grounds to believe that a crime has been committed and that evidence of the crime is in the vehicle. The State conceded that Stevenson did not see any crime being committed other than the fact Henning had an outstanding warrant for his arrest. The State argued the 2006 amendment in K.S.A. 2006 Supp. 22-2501(c) authorized and allowed the type of search Stevenson had performed in this case.

The trial court granted Henning's and Zabriskie's motions to suppress. The trial court held that Stevenson's search went beyond the scope of K.S.A. 2006 Supp. 22-2501. The trial court determined that under the 2006 amendment to 22-2501(c), the legislature intended to broaden the scope of a search to encompass a search for a crime other than that which brought the person into custody but did not intend to encompass a search for any crime. The trial court commented that a reading of K.S.A. 2006 Supp. 22-2501(c) to allow a search when the officer is merely looking for the instrumentalities or fruits of any crime would not meet constitutional standards under the Fourth Amendment to the United States Constitution.

The State appealed the district court's decision in both Henning's and Zabriskie's cases. The appeals were consolidated by our court.

We first consider the State's contention that the search of the vehicle occupied by Henning and Zabriskie was a valid search incident to arrest as specifically allowed by K.S.A. 2006 Supp. 22-2501 and that the evidence seized during the search should not have been suppressed.

The standards of review in appeals of suppression motions are well known and are applicable here.

"In reviewing a district court's decision regarding suppression, [an appellate] court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. This court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. [Citation omitted.]" *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

But, when the material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). The State bears the burden of proof for a suppression motion. It must prove to the trial court the lawfulness of the search and seizure. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006).

In this case, we have additional questions of statutory interpretation and the ever-present Fourth Amendment issues. In *State v. Mendez*, 275 Kan. 412, 420-21, 66 P.3d 811 (2003), the language of both the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights was set forth and it was noted the protections thereunder to be free of unlawful searches and seizures are identical under both provisions. See *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 (1993). *Mendez* further stated:

"It is a well-recognized rule that unreasonable searches and seizures are constitutionally prohibited and '[u]nless a search falls within one of a few exceptions, a warrantless search is per se unreasonable.' *State v. Canaan*, 265 Kan. 835, Syl. ¶ 1, 964 P.2d 681 (1998). We further said in *Canaan* that '[t]he exclusionary rule prohibits the admissions of the "fruits" of illegally seized evidence, *i.e.*, any information, object, or testimony uncovered or obtained, directly or indirectly, as a result of the illegally seized evidence or any leads obtained therefrom.' 265 Kan. 835, Syl. ¶ 3." 275 Kan. at 420-21.

One of the recognized exceptions to the search warrant requirement is the contemporaneous search incident to arrest doctrine, which in Kansas is statutorily based. See *Mendez*, 275 Kan. at 421; *State v. Anderson*, 259 Kan. 16, 19, 910 P.2d 180 (1996). In our case the State's only argument is that the search of the vehicle was a search incident to a lawful arrest.

As we are taught by *State v. Conn*, 278 Kan. 387, 391, 99 P.3d 1108 (2004): "In Kansas, the permissible circumstances, purposes, and scope of a search incident to arrest are controlled by statute. [Citation omitted.]" The statute in issue in our case is K.S.A. 2006 Supp. 22-2501(c), as amended by the 2006 Kansas Legislature effective as of July 1, 2006. The applicable change is in subsection (c) which replaces *the* with *a* making our Kansas search incident to lawful arrest statute read as follows:

"Sec. 8. K.S.A. 22-2501, as repealed by 2006 Senate Bill No. 366, is hereby revived and amended to read as follows: 22-2501. When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

(a) Protecting the officer from attack;

(b) Preventing the person from escaping; or

(c) Discovering the fruits, instrumentalities, or evidence of the *a* crime." L. 2006, ch. 211, sec. 8.

This change frames the issue in our case: Was it permissible for Stevenson to search the vehicle Henning had been occupying once Henning had been lawfully arrested based on the outstanding traffic warrant? For the reasons herein stated, we answer this question "yes."

"The interpretation of a statute is a question of law over which this court has unlimited review. An appellate court is not bound by the trial court's interpretation. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). *Bryan* further teaches us:

"The fundamental rule of statutory construction is to ascertain the legislature's intent. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court

must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. [Citation omitted.]" 281 Kan. at 159.

Moreover, as a general rule, criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt as to the meaning of the statute is decided in favor of the accused. Nevertheless, the rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Snow*, 282 Kan. 323, 340-41, 144 P.3d 729 (2006).

Although this entire case is premised on the change of a single word in K.S.A. 2006 Supp. 22-2501(c), it is helpful to look to several of the many cases that involved K.S.A. 22-2501(c) prior to the 2006 amendment.

In *Conn*, Justice Luckert made it clear that "[a] search which is purely a search incident to arrest may only be conducted for the purposes listed in K.S.A. 22-2501: officer protection; escape prevention; and discovery of the fruits, instrumentalities, or evidence of the crime." 278 Kan. 387, Syl. ¶ 1. It was noted in *Conn* that in *Anderson*, 259 Kan. at 22, our Supreme Court had previously "rejected the view that case law applying the Fourth Amendment, in particular *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981), meant that a search of an automobile could automatically be conducted when an occupant was arrested." 278 Kan. at 391. In *Anderson*, our Supreme Court, speaking through Chief Justice McFarland, stated that Kansas has "a statute that sets forth the permissible circumstances and purposes under which a search incident to arrest can be made. [K.S.A. 22-2501] may possibly be more restrictive than prevailing case law on the Fourth Amendment would permit, but this does not alter the plain language of the statute." 259 Kan. at 22.

In *Anderson*, an officer searched a car for drugs after arresting the driver for driving on a suspended license and on an outstanding traffic warrant. Our Supreme Court held that the search was an improper search incident to arrest because it was not conducted for any of the purposes under K.S.A. 22-2501. 259 Kan. at 24. It was pointed out that the arresting officer was not concerned for

his safety, nor did he claim that he was looking for the fruits, instrumentalities, or evidence of the crimes for which the driver was arrested. 259 Kan. at 19.

Similarly in *Conn*, 278 Kan. 387, it was held that a search of a car after the defendant had been arrested for driving without a proper driver's license and failing to provide proof of insurance could not be upheld under K.S.A. 22-2501. The officer testified he was looking for the defendant's identification, but both the Court of Appeals and the Supreme Court found that K.S.A. 22-2501(c) does not permit a warrantless search of a car for the purpose of discovering a valid license after the officer had just arrested the driver for not having one. 278 Kan. at 392-94.

It is thus clear that prior to July 1, 2006, an officer must have been searching for evidence of *the* crime for which the person had been arrested in order for the search under subsection (c) to be upheld as a valid search incident to arrest.

The language of K.S.A. 22-2501 and the *Anderson* decision has been believed by law enforcement officials to place them at a disadvantage to most of the rest of the United States in searches after a valid arrest had been made. The desire to be able to operate as allowed by the United States Supreme Court in *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981), and *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 895 S. Ct. 2034, *reh. denied* 396 U.S. 869 (1969), to search an arrestee and the immediately surrounding area once a lawful custodial arrest has been made led law enforcement officials to request changes by the Kansas Legislature. This action led to the 2006 Kansas Legislature changing subsection (c) of K.S.A. 22-2501 to now read that an officer may search an arrested person and his or her immediate presence for the purpose of "[d]iscovering the fruits, instrumentalities or evidence of *a* crime." (Emphasis added.) L. 2006, ch. 211, sec. 8. The State maintains that the change in K.S.A. 2006 Supp. 22-2501(c) from "the" to "a" authorizes law enforcement to search the arrestee and the area within his or her immediate presence for fruits, instrumentalities, or evidence of an unspecified or unidentified crime.

It is important that we consider and follow the long-time rule in Kansas that we find in *State v. McElroy*, 281 Kan. 256, 263, 130 P.3d 100 (2006): " 'When the legislature revises an existing law, it is presumed that the legislature intended to change the law from how it existed prior to the amendment, and it is presumed that the legislature does not intend to enact useless or meaningless legislation.' *State v. Van Hoet*, 277 Kan. 815, 826, 89 P.3d 606 (2004)."

There is no question but that by changing the word "the" to "a" in K.S.A. 2006 Supp. 22-2501(c), the legislature has broadened and expanded an officer's statutory authority to search incident to arrest. "[A]" is an indefinite article that does not point to any particular object; "a" is "[u]sed before nouns and noun phrases that denote a single, but unspecified person or thing." Webster's II New College Dictionary 1 (2001). As the State points out, an application of the plain meaning of the word "a" along with the other words in K.S.A. 2006 Supp. 22-2501(c) results in a law enforcement officer being authorized to search the person arrested and the area within such person's immediate presence (in our case, the vehicle) for the purpose of discovering the fruits, instrumentalities, or evidence of *any unspecified* crime.

However, Henning and Zabriskie argue that this is a criminal statute that must be strictly construed in favor of the accused, see *State v. Stout*, 37 Kan. App. 2d 510, 515, 154 P.3d 1176 (2007), and in doing so, the officer must have an identifiable crime and probable cause to believe that it occurred even though it may not be the crime for which the person was arrested.

To accept Henning's argument, however, this court would have to read out the phrase "a crime" and substitute it with "an identified crime for which the officer has probable cause to believe occurred." Such an interpretation would violate the rule of statutory construction that " '[o]rdinary words are to be given their ordinary meanings without adding something that is not readily found in the statute or eliminating that which is readily found therein.' [Citation omitted.]" *McElroy*, 281 Kan. at 262. Moreover, such an interpretation does not comport with the plain language of K.S.A. 2006 Supp. 22-2501(c).

It will be helpful to look to the legislative history for it appears that by changing "the crime" to "a crime" in K.S.A. 2006 Supp. 22-2501(c), the legislature intended to authorize a search incident to a lawful arrest for the purpose of discovering the fruits, instrumentalities, or evidence of an unidentified or unknown crime, without requiring the officer to have probable cause to believe that the arrested person committed a crime for which admissible evidence will be found.

In looking at the legislative history, we are bound by the statement in *Estate of Soupene v. Lignitz*, 265 Kan. 217, 220, 960 P.2d 205 (1998):

"Although appellate courts will not speculate as to the legislative intent of a plain and unambiguous statute, [citation omitted] where the construction of a statute on its face is uncertain, the court may examine the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various suggested interpretations. [Citation omitted.]"

Research of legislative history reveals that proposed legislation was first introduced in 2004 to amend K.S.A. 22-2501. House Bill 2541, which proposed changing "the" to "a" in K.S.A. 22-2501(c), was introduced in 2004 by the House Corrections and Juvenile Justice Committee. House J. 1994, p. 967. Kyle Smith, director of public and governmental affairs with the Kansas Bureau of Investigation, testified in favor of the bill. Smith discussed the bright-line rule from *Belton* that when an officer has made a lawful arrest of the occupant of an automobile, he may, as a contemporaneous incident of the arrest, search the passenger compartment of the automobile and any containers found within the passenger compartment. Nevertheless, Smith pointed out that our Supreme Court in *Anderson*, 259 Kan. 16, had interpreted K.S.A. 22-2501(c) to authorize officers to search for fruits, instrumentalities, or evidence of "the" crime, not "any" crime. Smith said:

"HB 2542 would change the word to the broader 'a' from the narrower 'the'. This is not any reduction in anyone's constitutional rights. It is merely bringing our statute into accord with law elsewhere in the United States as well as with the law in Kansas prior to this statute being construed in 1996. I would note that there was no problem with abuses prior to 1996, when the *Belton* rule was the

law. The only thing this *State v. Anderson* case has done is it has allowed certain criminals who are already under arrest to escape punishment for other crimes they have committed, as well as confuse the training of law enforcement officers throughout the state." Minutes, House Corrections and Juvenile Justice Comm., February 2, 2004.

At the same hearing, Randall Hodgkinson, deputy appellate defender, testified against the proposed amendment to K.S.A. 22-2501(c), citing several practical and legal problems with the proposed legislation. Hodgkinson indicated that the amendment might not survive constitutional scrutiny based on how our Supreme Court had interpreted *Belton*. Minutes, House Corrections and Juvenile Justice Comm., February 2, 2004. There was no final action taken on the proposal in 2004.

The identical proposed amendment was again introduced in 2005 in House Bill 2261. House J. 2005, p. 104. Michael Jennings, legislative chair of the Kansas County and District Attorneys Association, expressed support in a letter stating the amendment would allow the State to use in evidence anything possessed by an arrested person that had been found on their person or in the passenger compartment of their car when the arrest was made. Minutes, House Corrections and Juvenile Justice Comm., February 14, 2005.

Kyle Smith again testified, but this time he urged the committee to repeal K.S.A. 22-2501 and let officers be guided by the constitutional restraints set down by the United States Supreme Court. Minutes, House Corrections and Juvenile Justice Comm., February 14, 2005. At the same hearing, Jared Maag, Kansas deputy attorney general, also testified in favor of repealing K.S.A. 22-2501. Maag pointed out that only five other states statutorily prescribe the limits of a law enforcement officer's right to search incident to an arrest, and he said that codifying this area of search and seizure law breeds conflict with the Kansas *Anderson* case. Minutes, House Corrections and Juvenile Justice Comm., February 14, 2005.

The legislative proceedings for the remainder of the 2005 session shows a bill to repeal K.S.A. 22-2501 passing the House and being referred to the Senate Judiciary, which held a hearing where Smith and Maag again testified. Minutes, Senate Judiciary Comm., March

17, 2005. The Senate Judiciary Committee recommended the passage of Senate Bill 2261 which would have repealed K.S.A. 22-2501, but the committee of the whole recommended Substitute House Bill 2261 that added back in the K.S.A. 22-2501 language but changed "the" to "a" in subsection (c). This bill passed the Senate, but although it was considered by a conference committee, it did not pass in 2005. Senate J. 2005, p. 837.

The testimony concerning K.S.A. 2006 Supp. 22-2501 has been shown, and in procedural actions near the end of the 2006 legislative session, Senate Bill 366 repealing K.S.A. 22-2501 was passed by both houses. House J. 2006, p. 2184; Senate J. 2006, p. 1799; see L. 2006, ch. 194, sec. 36. But, before this legislation became effective, the legislature added language to House Substitute for Senate Bill 431 reviving and amending K.S.A. 22-2501 by changing the language of subsection (c) from "the" to "a." The amended bill was passed by both houses and signed into law by Governor Sebelius. See L. 2006, ch. 211, secs. 8, 15, and 16; K.S.A. 2006 Supp. 22-2501.

It is clear from this review of the legislative process that the legislature intended to broaden the actions a law enforcement officer may take once a lawful arrest is effected. The legislative action was taken in response to the *Anderson* decision which had followed the prior statutory language of K.S.A. 22-2501, but resulted in narrowing the allowed search incident to arrest authority of law enforcement officers over what is allowed by decisions of the United States Supreme Court. Based on the legislative history, and the legislature's desire to continue and expand K.S.A. 2006 Supp. 22-2501, the ultimate change shows the intent to give law enforcement officers the same rights as exist under the United States Supreme Court *Belton* decision.

With the apparent legislative intent to rely on the *Belton* decision, a brief discussion of the jurisprudence of the United States Supreme Court with reference to decisions relating to searches incident to an arrest is indicated. This began in 1969 with the decision of *Chimel v. California*, 395 U.S. 752, where the Court held the scope of a search to be unreasonable because it went beyond the arrestee's person and the area from which he might have ob-

tained a weapon or something that could have been used as evidence against him. But, the *Chimel* Court announced the following rules:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence." 395 U.S. at 762-63.

*Chimel* was followed in 1981 by *New York v. Belton*, 453 U.S. 454, where a bright-line rule for police searches of the interior of a vehicle when the vehicle's occupants have been arrested was established. In *Belton*, the officer stopped a car for speeding. During the stop, the officer discovered that none of the four occupants owned the car, nor were they related to the car's owner. Moreover, the officer had smelled burnt marijuana and had seen an envelope that he associated with marijuana on the floor of the car. The officer directed the occupants to get out of the car and placed them under arrest. They were separated and searched. While searching the passenger compartment of the car, the officer discovered a black leather jacket that belonged to the defendant on the back seat. The officer unzipped one of the pockets and discovered cocaine. The defendant argued that the cocaine should be suppressed.

The *Belton* Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460. The Court further held: "It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. [Citations omitted.]" 453 U.S. at 460. The Court provided a footnote

that its decision did not change *Chimel's* principles: "Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." *Belton*, 453 U.S. at 460 n.3.

We will later discuss a recent search incident to arrest case, *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004), where the *Belton* rule was applied to an arrested person who was a "recent occupant" of a vehicle. Several of the opinions in *Thornton* have been cited by Henning in questioning the constitutionality of K.S.A. 2006 Supp. 22-2501 if it is interpreted as we have done in this case. But *Belton* remains the governing decision and its application to the facts of our case through the 2006 wording of K.S.A. 2006 Supp. 22-2501(c) clearly justified Stevenson to make the search of the vehicle that he accomplished after the lawful arrest of Henning and requires that we hold the trial court erroneously granted the motions to suppress in these two cases.

In reaching this conclusion, we also look to decisions in Illinois and Florida where the *Belton* holding has been followed in states that have statutory provisions nearly identical to K.S.A. 2006 Supp. 22-2501(c). The Illinois statute governing searches incident to arrest permits the discovery of any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of an offense. Ill. Comp. Stat. ch. 725 5/108-1(d) (2006). Similarly, the Florida statute permits a search of the person arrested and the area within the person's immediate presence for the purpose of discovering the fruits of a crime. Fla. Stat. 901.21(1)(c) (2001).

Both Florida in *State v. Gilbert*, 894 So. 2d 1055, 1056-57 (Fla. Dist. App. 2005), and Illinois in *People v. Bailey*, 159 Ill. 2d 498, 504-07, 639 N.E.2d 1278 (1994), applied the bright-line rule of *Belton* to uphold a search of a vehicle incident to an arrest. The facts in both cases involved lawful stops for traffic violations and subsequent searches of the vehicle occupied by the arrestee.

The First District Court of Appeals in Florida stated:

"When an occupant of a vehicle is arrested, the police may search the vehicle. See *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981). The authority for a vehicle search incident to an arrest does not depend on a reasonable suspicion of criminal activity or probable cause. It is instead a bright-line rule arising from the very fact of the arrest itself, regardless of whether the officers had a reasonable suspicion of criminal activity. [Citations omitted.] This rule is based on the need to remove any weapons and to preserve any evidence that might be in the vehicle. See *Belton*, 453 U.S. at 461-62; *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)." *Gilbert*, 894 So. 2d at 1056-57.

Similarly, the Illinois Supreme Court said:

"Although a search incident to arrest is based on the need to disarm and discover evidence, the authority to search does not depend on the probability in a particular case that weapons would in fact be found or evidence would in fact be destroyed. ' "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." ' [Citations omitted.]" *Bailey*, 159 Ill. 2d at 504.

The decisions in both Florida and Illinois support the decision and result which we now reach in Kansas.

It is apparent that we followed the *Belton* rule here in Kansas before K.S.A. 22-2501 was adopted. See *State v. White*, 230 Kan. 679, Syl., 640 P.2d 1231 (1982); and *State v. Press*, 9 Kan. App. 2d 589, Syl. ¶ 3, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984). It is logical that we should now continue to do so because of the amendment in K.S.A. 2006 Supp. 22-2501(c) which was clearly adopted by the Kansas Legislature to return our jurisprudence to the earlier rule that where a lawful arrest has been made, the *Belton* bright-line rule applies.

K.S.A. 2006 Supp. 22-2501(c) allows an officer who has made a lawful arrest to search the arrestee and the arrestee's immediate presence for the purpose of "[d]iscovering the fruits, instrumentalities, or evidence of a crime." Based on the plain language of K.S.A. 2006 Supp. 22-2501(c), the officer's authority to search does not depend on the likelihood or probability that evidence of the crime of arrest will be found.

Under *Belton*, a search of the passenger compartment of an automobile incident to arrest is permissible when the arrestee is an

occupant or *recent occupant* of the automobile. See *State v. Van Wey*, 18 Kan. App. 2d 260, Syl. ¶ 1, 850 P.2d 283 (1993). Moreover, in *Thornton*, 541 U.S. at 617, the United States Supreme Court held that "*Belton* governs even when a officer does not make contact until the person arrested has left the vehicle." As long as the arrestee is a " 'recent occupant' " of the vehicle, "officers may search that vehicle incident to arrest." 541 U.S. at 623-24. Here, Stevenson's testimony establishes that Henning was in his car immediately before his arrest. Stevenson asked Henning to get out of his car, checked Henning's identity, and placed him under arrest. Because Henning had been a recent occupant of the car when he was arrested, Stevenson was justified in searching the passenger compartment of the car as a search incident to arrest.

The trial court's ruling on the motions to suppress of both Henning and Zabriskie must be reversed.

Although it is questionable whether the constitutionality of K.S.A. 2006 Supp. 22-2501 is properly before us, the motions to suppress below alleged that if the search was deemed to be proper, it would be based on an unconstitutional statute, and the district court so suggested in its ruling although it did not so find in sustaining the suppression motions. The appellees have argued on appeal that if K.S.A. 2006 Supp. 22-2501 authorizes and allows the search that took place in this case, then the statute is unconstitutional. We, therefore, reach and consider the constitutionality of K.S.A. 2006 Supp. 22-2501.

Our duty when the constitutionality of a statute is in issue is well known, as stated in *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006):

" 'The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond reasonable doubt. [Citation omitted.]' *State v. Whitesell*, 270 Kan. 259, 268, 13 P.3d 887 (2000)."

It is further clear that the interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

To support the argument that K.S.A. 2006 Supp. 22-2501 is unconstitutional if construed as we have done in this case, Henning points to concurring opinions in *Thornton*, 541 U.S. at 615. *Thornton* held that the rule in *Belton* governs even when an officer does not make contact until the person arrested has left the vehicle. 541 U.S. at 617. The United States Supreme Court stated that as long as an arrestee is the " 'recent occupant' of a vehicle" as the petitioner was in that case, "officers may search that vehicle incident to the arrest." 541 U.S. at 623-24.

In a concurring opinion, Justice Scalia, with whom Justice Ginsburg joined, stated that he would "limit *Belton* searches to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 541 U.S. at 632. However, under this rule, the search that took place in *Thornton* would be justified. Noting that the petitioner was lawfully arrested for a drug offense, Justice Scalia stated that it was reasonable for the officer "to believe that further contraband or similar evidence relevant to the crime for which he had been arrested might be found in the vehicle from which he had just alighted and which was still within his vicinity at the time of arrest." 541 U.S. at 632 (Scalia, J., concurring in the judgment).

Chief Justice Rehnquist, writing for the plurality, declined to address the issue discussed by Scalia in his concurring opinion, stating:

"Whatever the merits of Justice Scalia's opinion concurring in the judgment, this is the wrong case in which to address them. Petitioner has never argued that *Belton* should be limited 'to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle, [citation omitted], nor did any court below consider Justice Scalia's reasoning. [Citations omitted.] The question presented—'[w]hether the bright-line rule announced in *New York v. Belton* is confined to situations in which the police initiate contact with the occupant of a vehicle while that person is in the vehicle,' Pet. for Cert.—does not fairly encompass Justice Scalia's analysis. [Citation omitted.] And the United States has never had an opportunity to respond to such an approach. [Citation omitted.] Under these circumstances, it would be imprudent to overrule, for all intents and purposes, our established constitutional precedent, which governs police authority in a common occurrence such as automobile searches pursuant to arrest, and we decline to do so at this time." 541 U.S. at 624 n.4.

Justice O'Connor wrote a separate concurring opinion stating that she joined in all but footnote 4 of the plurality opinion. Expressing dissatisfaction with the state of the law in this area, Justice O'Connor stated:

"As Justice Scalia forcefully argues, [citation omitted] lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel v. California*, 395 U.S. 752[, 23 L. Ed. 2d 685, 89 S. Ct. 2034] (1969). That erosion is a direct consequence of *Belton's* shaky foundation. While the approach Justice Scalia proposes appears to be built on firmer ground, I am reluctant to adopt it in the context of a case in which neither the Government nor the petitioner has had a chance to speak to its merit." 541 U.S. at 624-25 (O'Connor, J., concurring in part).

Henning unconvincingly argues that three justices in *Thornton* expressing concern about the scope of *Belton* allowing police to search a car when a passenger has been arrested makes it likely that the search in this case would be held to be based on an unconstitutional statute. We do not agree.

It is clear that *Thornton* did not overrule *Belton*, and it is axiomatic that only the United States Supreme Court may overrule its precedent. Thus, *Belton* remains the law, and we would violate United States Supreme Court precedent if we attempted to do so. The *Belton* decision was decided in 1981, and it is firmly rooted in the search incident to arrest jurisprudence.

We followed *Belton* in Kansas beginning with *State v. Croft*, 6 Kan. App. 2d 821, Syl. ¶ 1, 635 P.2d 972 (1981), which was expressly approved by our Kansas Supreme Court in *White*, 230 Kan. at 680. *Belton* was not limited by Chief Justice McFarland's opinion in *State v. Anderson*, 259 Kan. 16, 23, 910 P.2d 180 (1996), which clearly held that while "*Belton* may expand the scope of the constitutionally permissible search of a vehicle," it does not expand the permissible purpose of the search. The 2006 amendment in K.S.A. 2006 Supp. 22-2501 has now expanded the purpose of such a search so as to comply with *Belton's* Fourth Amendment permissible rule.

There is no logical reason for us to not follow *Belton*. We hold that when the Kansas Legislature amended 22-2501(c), it adopted

a constitutional statute which expanded the scope of the permissible purpose of a search incident to a lawful arrest in Kansas consistent with *Belton*.

We should not speculate on the result of an attack on *Belton* at some future date in the United States Supreme Court. Until the *Belton* rule is changed, it is binding precedent which we are obligated to follow. When we follow *Belton*, we find that the 2006 amendment to the wording of K.S.A. 2006 Supp. 22-2501(c) changing "the" to "a" is constitutional as written and as applied to the facts of this case.

The trial court's rulings on the motions to suppress in both the Henning and the Zabriskie cases are reversed. Both cases are remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.