[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1315 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1316 
OPINION
Pursuant to a negotiated disposition, defendant entered a no contest plea to one count of felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)), [1] and was sentenced to two years in state prison. On appeal, defendant challenges the trial court's denial of his motion to suppress pursuant to section 1538.5, as authorized by section 1538.5, subdivision (m) and California Rules of Court, rule 8.304(b)(4)(A) and (B). At the heart of the issues raised in this appeal is the retroactivity of the recent United States Supreme Court decision in Arizona v. Gant (2009) 556 U.S. ___
[173 L.Ed.2d 485, 129 S.Ct. 1710] (Gant) (refining the permissible scope of a search incident to the arrest of a recent occupant of an automobile under New York v. Belton (1981)453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860] (Belton)) and, assuming its retroactive application to defendant's case, whether the evidence seized from defendant's automobile is nevertheless admissible under the good faith exception as set forth in United States v. Leon (1984) 468 U.S. 897
[82 L.Ed.2d 677, 104 S.Ct. 3405] (Leon) and subsequent authority. We conclude that the evidence seized from defendant's car was admissible, despite the application of Gant, as the officers relied in good faith upon what the Supreme Court itself referred to in that decision as "a broad reading ofBelton [that] has been widely accepted." (Gant,supra, 556 U.S. at p. ___, fn. 11 [129 S.Ct. at p. 1723, fn. 11].) We therefore affirm the decision of the trial court denying defendant's motion to suppress. *Page 1317 
 I. BACKGROUND
Defendant originally raised his motion to suppress at the preliminary hearing.[2] Evidence adduced there showed that on May 25, 2007, Deputy Scott Wooden of the Contra Costa County Sheriffs Department stopped the vehicle defendant was driving due to defendant's failure to stop at a red light. Defendant was unable to produce a driver's license and indicated that it had been suspended. Deputy Wooden ordered defendant out of the vehicle; defendant complied but when Wooden asked if defendant had anything illegal in his possession, he fled. Defendant was pursued by Deputy Wooden and several other officers, but they were unable to apprehend him immediately. One assisting officer, Sergeant Matt Malone, returned to defendant's vehicle, which was unoccupied and locked. He called for a tow truck. Once the tow truck arrived some 15 or 20 minutes later, the vehicle was opened and searched. Other officers had arrested defendant in the meantime. A .45-caliber semiautomatic pistol was found in the center console of defendant's car.
The magistrate denied defendant's motion to suppress, finding that although the evidence was not perfectly clear with regard to the timing of the arrest and the search, "the evidence shows that the search was done within a few minutes of [the arrest], I think it was five to ten minutes was the testimony, so I think that's contemporaneous with the arrest. The arrest itself, it's not clear exactly the moment in time when the defendant was arrested, but apparently it was when he was actually physically apprehended, occurred sometime within a few moments of that stop. It's not real clear." The magistrate also determined that the search of the vehicle was permissible as an inventory or impound search, despite the evidence being "a little sloppy," taking judicial notice of California Vehicle Code statutes permitting an officer to impound a vehicle when the driver's license is suspended. Defendant renewed his motion to suppress after his arraignment on the information and it was again denied, the court concluding that the magistrate had "the right handle" on the motion. Defendant now challenges the propriety of the denial of his motion to suppress on appeal. *Page 1318 
 II. DISCUSSION
A. Search Incident to Arrest
Defendant contends that the search of his vehicle was not valid under the search-incident-to-arrest exception to the search warrant requirement, as it exceeded the scope of such a search under the recent United States Supreme Court decision inGant, supra, 556 U.S. ___ [129 S.Ct. 1710], and the evidence seized from his car should therefore be suppressed.
1. The Gant decision.
In Gant, the court revisited the application of the search-incident-to-arrest exception to the requirement for a search warrant to the situation where a vehicle is searched pursuant to the arrest of one of its recent occupants. The court responded to what it described as a "chorus that has called for us to revisit Belton[, supra, 453 U.S. 454]" (Gant,supra, 556 U.S. at p. ___ [129 S.Ct. at p. 1716]), its previous leading case defining the application of this search warrant exception in the context of automobile searches. The court itself acknowledged that Belton "has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search."[3] (Gant, 556 U.S. at p. ___
[129 S.Ct. at p. 1718].) The rationale for this search warrant exception was, as noted in Belton, to permit the police to search the area from which the arrestee might obtain a weapon or destructible evidence (pursuant to Chimel v. California
(1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] [defining general scope of area that may be searched incident to arrest as the area within the arrestee's immediate control — that area into which the arrestee might reach to grab a weapon or contraband]). The Gant court concluded that the broad interpretation of Belton subscribed to by many, if not most, courts in the intervening decades since Belton
was incompatible with this underpinning rationale.
As summarized by the court, Belton, supra,453 U.S. 454 "has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search. This reading may be attributable to Justice Brennan's dissent in Belton, in which he characterized the Court's holding as resting on the `fiction . . . that the interior of a car is always within the *Page 1319 
immediate control of an arrestee who has recently been in the car' [Citation.]" (Gant, supra, 556 ILS. at p. ___ [129 S.Ct. at p. 1718], italics omitted.) Justice Brennan opined that such a result would presumably attach "`even if [the officer] had handcuffed Belton and his companions in the patrol car' before conducting the search. [Citation.]" Justice Brennan's interpretation of the majority's opinion in Belton, theGant court recognized, "has predominated" in courts of appeal decisions applying Belton. (Gant, supra,556 U.S. at p. ___ [129 S.Ct. at p. 1718].) Thus, it commonly had been held that an officer could search the entire passenger compartment and its containers after the custodial arrest of one of its occupants, even for a simple traffic offense, without regard to whether or not the arrestee could reach into that area in order to obtain a weapon or contraband. As Justice O'Connor had observed some five years earlier, "lower court decisions seem . . . to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales ofChimel [v. California, supra, 395 U.S. 752] [officer safety and preservation of evidence]." (Thornton v.United States (2004) 541 U.S. 615, 624 [158 L.Ed.2d 905,124 S.Ct. 2127] (cone. opn. of O'Connor, J.).)
The Gant court eliminated the legal fiction that the passenger compartment was actually accessible to an arrestee secured in an area away from the vehicle, and limited the scope of the search-incident-to-arrest exception. As defined inGant, the police may search the passenger compartment of a vehicle incident to the recent arrest of one of its occupants "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." (Gant, supra, 556 U.S. at p. ___
[129 S.Ct. at p. 1723].)[4] As to the first prong of theGant rule, the court further opined that "[b]ecause officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains. [Citation.]" (556 U.S. at p. ___, fn. 4 [129 S.Ct. at p. 1719, *Page 1320 
fn. 4].) As to the second prong, the court noted that "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. [Citations.]" (Id.
at p. ___ [129 S.Ct. at p. 1719].) Thus, one would expect that many fewer vehicle searches will be permitted under the search-incident-to-arrest exception post-Gant.
 2. Application of Gant to Search of Defendant's Car.
The Attorney General argues that even under the Gant
decision, the search of defendant's vehicle was permissible, as it was reasonable to believe that evidence of the crime of arrest (driving on a suspended license) might be located inside.[5] As defendant notes, however, the prosecution did not argue this specific theory below. Although Gant had not yet been decided when the motion to suppress was heard (and neither side was therefore focused upon the second prong ofGant permitting a search if it was reasonable to believe that the car contained evidence relating to the crime of arrest), the prosecution did rely below upon the theory of the search-incident-to-arrest exception to justify the search. In that context the prosecutor specifically indicated that the crime of arrest permitting the search was "the other charge, which is a [Penal Code section] 148, which is also alleged."[6]
In any event, we find it difficult to accept the Attorney General's argument that the car reasonably could be believed to contain evidence relating to defendant's arrest for driving on a suspended license. As argued by the Attorney General, such a search would be permitted under the second prong of Gant,supra, 556 U.S. ___ [129 S.Ct. 1710] as, "[t]he search of the vehicle's interior was permissible to discover his identification and documents relating to the registration and ownership of the vehicle." Under this theory, the police could arguably search a vehicle under the second prong ofGant any time the arrest was for a traffic violation, as documents relating to the vehicle's registration and ownership, and the driver's identification, might be located there. The fact that defendant here admitted his license was suspended does not alter the situation in any meaningful way. Such a result seems at odds with the Gant court's statement that "there will be no *Page 1321 
reasonable basis to believe the vehicle contains relevant evidence." (Id. at p. ___ [129 S.Q. at p. 1719.)[7]
We need not finally resolve this issue, however, as we find that even if the search of defendant's car were not justifiable as a search incident to arrest under Gant, the evidence located in the car is nevertheless admissible.
 3. Retroactivity of Gant Decision and Application of Good Faith Exception to Exclusionary Rule.
The Attorney General concedes that Gant, supra,556 U.S. ___ [129 S.Ct. 1710] applies retroactively to defendant's case, but nevertheless argues that even if the search were impermissible under Gant, the evidence seized from defendant's vehicle is admissible under the good faith exception to the exclusionary rule. Defendant contends that application of the good faith exception in this context is in direct conflict with the rules of retroactivity expressed in Griffith v.Kentucky (1987) 479 U.S. 314, 325 [93 L.Ed.2d 649,107 S.Ct. 708] (Griffith). We agree with the Attorney General's position.
Rules governing the retroactivity of Fourth Amendment decisions by the United States Supreme Court have a long and varied history. In United States v. Johnson (1982)457 U.S. 537 [73 L.Ed.2d 202, 102 S.Ct. 2579] (Johnson), the court reviewed the development of the law and indicated that "`"[r]etroactivity must be rethought."'" (Id. at p. 548.) Ultimately the Johnson court set forth the following rule of retroactivity of the court's Fourth Amendment decisions: "subject to [certain exceptions], a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." (Johnson, supra, at p. 562.) The exception to this rule relevant here is the "clear break exception." As the court later stated, "Under this exception, a new constitutional rule was not applied retroactively, even to cases on direct review, if the new rule explicitly overruled a past precedent of this Court, or disapproved a practice this Court had arguably sanctioned in prior cases, or overturned a longstanding practice that lower courts had uniformly approved. [Citation.]" (Griffith,supra, 479 U.S. at p. 325.) Thus, if Johnson's
"`clear break'" rule were still to apply, even though defendant's case was pending when Gant, supra, 556 U.S. [129 S.Ct. 1710] was decided, Gant arguably would not be applied retroactively as it fell within this "clear break *Page 1322 
exception," since it at the very least overturned a long-standing practice that most intermediate appellate courts had approved.[8]
However, a mere five years after Johnson, the court once again revisited the issue of the retroactivity of its decisions in the Griffith case cited above. (Griffith, supra, 479 U.S. 314.) In Griffith, the issue was the retroactivity of the court's decision inBatson v. Kentucky (1986) 476 U.S. 79 [90 L.Ed.2d 69,106 S.Ct. 1712], a case dealing with racial discrimination in the exercise of peremptory challenges during jury selection. After once again reviewing the development of case law regarding the retroactivity of its decisions, including those in the area of Fourth Amendment law (such as Johnson, supra,457 U.S. 537), the court took yet another turn and this time rejected Johnson's "`clear break'" exception to the general rule of retroactivity. The court held that "The fact that the new rule may constitute a clear break with the past has no bearing on the `actual inequity that results' when only one of many similarly situated defendants receives the benefit of the new rule. [Citation.]" (Griffith, supra, at pp. 327-328.) The court concluded, "We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a `clear break' with the past." (Id. at p. 328.) Nevertheless, assumingGriffith's general applicability in Fourth Amendment cases (a point the Attorney General concedes and courts seem to uniformly accept), the admissibility of the evidence seized from defendant's automobile in this case is still an issue. Even if the evidence were seized in violation of the Fourth Amendment, due to the retroactive application of Gant, supra,556 U.S. ___ [129 S.Ct. 1710], the issue remains as to what remedy should attach because of that violation.
Not considered by the court in Griffith, supra,479 U.S. 314 was the interplay between the rules of retroactivity and a major precept of Fourth Amendment case law, the good faith exception to the application of the exclusionary rule as a remedy for Fourth Amendment violations. The Griffith
decision deals only with the retroactivity of a decision of the court, here one that determines the substantive issue of whether or not certain action by the government was in violation of the Fourth Amendment, and does not purport to address the remedy that should attach if a violation is found to have occurred.[9] In the realm of Fourth Amendment law, a separate line of United States Supreme Court authority has developed regarding the remedy of the *Page 1323 
exclusionary rule, and an exception to that remedy for cases involving good faith reliance by the police.
Three years before Griffith, supra, 479 U.S. 314, the court had determined in Leon, supra, 468 U.S. at pages 918-919 that an exception to the application of the exclusionary rule to evidence found to have been obtained in violation of the Fourth Amendment would exist where the police relied in good faith upon the issuance of a search warrant by a neutral and detached magistrate. The basis of this good faith exception was the court's determination that suppression of the evidence would not serve the primary purpose of the exclusionary rule — to deter police misconduct. As the court explained, "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure lworks[s] no new Fourth Amendment wrong.' [Citation.] . . . The rule thus operates as `a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' [Citation.]" (Leon, at p. 906.) The court concluded that "[w]hether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is `an issue separate from the question whether theFourth Amendment rights of the party seeking to invoke therule were violated by police conduct.' [Citation.]" (Ibid., italics added.) The court thus divorced the issues of a substantive violation of the Fourth Amendment and the remedy that should be afforded for such a violation.
The Leon opinion (Leon, supra, 468 U.S. 897) specifically applied the good faith exception to police reliance upon a search warrant.[10] The issue quickly arose as to whether the exception would be extended outside the area of police reliance upon a search warrant, for example, to cases in which the police relied in good faith upon a statute authorizing their warrantless search. That issue was resolved by the high court in Illinois v. Krull (1987) *Page 1324 480 U.S. 340 [94 L.Ed.2d 364, 107 S.Ct. 1160] (Krull). The court there ruled that the Fourth Amendment exclusionary rule does not apply to evidence that police obtained in objectively reasonable reliance upon a statute that authorized a warrantless search, where the statute was later determined to be unconstitutional, as application of the rule would not serve its primary purpose, to deter police misconduct. (Krull, at p. 352.)[11] Thus two lines of Supreme Court authority have developed in parallel, one dealing with the retroactivity of its decisions and the other addressing the application of the good faith exception to the exclusionary rule.
The Leon court addressed the interplay of prior decisional law regarding the retroactivity that should be afforded its Fourth Amendment decisions, and nevertheless adopted the good faith exception. The respondent inLeon argued that the rules in Johnson, supra,457 U.S. 537 regarding retroactivity of Supreme Court cases dealing with Fourth Amendment issues precluded the court from adopting the good faith exception to the exclusionary rule. The court responded, "Contrary to respondents' assertions, nothing in Johnson precludes adoption of a good-faith exception tailored to situations in which the police have reasonably relied on a warrant issued by a detached and neutral magistrate but later found to be defective." (Leon, supra,468 U.S. at p. 912, fn. 9.) However, when Leon was decided, the status of the court's retroactivity rules was different from what they are today — Johnson's "`clear break'" rule had not yet been overturned by Griffith, supra,479 U.S. 314.
Does the good faith exception to the exclusionary rule remain compatible with the court's rules of retroactivity, afterGriffith, supra, 479 U.S. 314.[12] This issue was explored in Krull, supra, 480 U.S. 340. As previously discussed, Krull applied the good faith exception where a statute relied upon by the police to conduct a warrantless search had been ruled unconstitutional after the search was conducted. Concerned that under the majority's decision *Page 1325 
"no effective remedy is to be provided in the very case in which the statute at issue was held unconstitutional," Justice O'Connor stated in her dissenting opinion, "Finally, I find the Court's ruling in this case at right angles, if not directly at odds, with the Court's recent decision in Griffith v.Kentucky . . . (Krull, supra, at p. 368 (dis. opn. of O'Connor, J.).) Noting that "the extent to which our decisions ought to be applied retroactively has been the subject of much debate among Members of the Court for many years," Justice O'Connor opined that "there has never been any doubt that our decisions are applied to the parties in the case before the Court. [Citation.]" (Ibid.)[13] The majority responded to this criticism indicating, "As the dissent itself recognizes, however, this identical concern was present inLeon[, supra, 468 U.S. 897]. The dissent offers no reason why this concern should be different when a defendant challenges the constitutionality of a statute rather than of a warrant." (Krull, at pp. 354-355, fn. 11.) The court thus appeared unconcerned that the application of the good faith exception might be at odds with its rules of retroactivity as expressed in Griffith. The question remains, however, whether application of the exception in the context of the present case, where police have relied in good faith upon prior settled decisional law, would be incompatible with the court's elimination of the "clear break" exception to the retroactivity of its Fourth Amendment `decisions.
We see no discemable difference between the application of the good faith exception as in Krull, supra, 480 U.S. 340, when police rely upon a statute later determined to be unconstitutional, and police reliance upon prior decisional law subsequently changed by a decision of the United States Supreme Court.[14] Suppression of the evidence seized by the police in the present case in reasonable reliance upon more than a quarter of a century of case law interpreting Belton, supra,453 U.S. 454 to permit the search, would in no way deter future police misconduct, the primary purpose of the exclusionary rule. Indeed, application of the exclusionary rule in a situation such as this, where the police did not "blunder," but rather did precisely what the courts told them was acceptable under the Fourth Amendment, would offend basic precepts of the criminal justice system by allowing criminals (including dangerous ex-felons who possess a firearm) to go free because of a major change in decisional law that occurred after their conduct. Such offensive results serve only to undermine public confidence in the judicial system. That being the case, even though Gant,supra, 556 U.S. ___ [129 S.Ct. 1710] may apply retroactively to defendant's case, the evidence seized from *Page 1326 
defendant's car should nevertheless be admissible under the good faith exception to the exclusionary rule.[15]
Because of Gant's substantial departure from what was, by the decision's own admission, established case law interpreting the search-incident-to-arrest exception in the context of vehicle searches under Belton, supra,453 U.S. 454, this precise issue has now been the subject of several published opinions. Recent decisions on this issue in federal courts were summarized in United States v. Amos
(E.D.Tenn., Jan. 5, 2010, No. 3:08-CR-145) ___ F.Supp.2d ___
[2010 WL 56086, p. *6], "There is presently a split between the Circuit Courts of Appeals as to whether the good-faith exception applies to searches in violation of Gant that were conducted pvt-Gant. Compare United States v. McCane[
(10th Cir. 2009)] 573 F.3d 1037 . . . (holding that the good-faith exception to the exclusionary rule applies to searches which occurred before Gant), with United States v.Gonzalez[ (9th Cir. 2009)] 578 F.3d 1130 . . . (holding that the good-faith exception does not apply topre-Gant searches). District courts within the Sixth Circuit are also divided as to whether the good-faith exception applies. Compare United States v. Lopez[ (E.D.Ky. Sept. 23, 2009, No. 6:06-120-DCR [2009 WL 3112127]] (applying the good[-]faith exception) with [U.S. v.] Peoples
[(W.D.Mich., Oct. 29, 2009, No. 1:09-CR-170), 2009 WL 3586564] (stating that `good[-]faith reliance upon case law cannot excuse suppression under the current formulation and application of the good[-]faith doctrine'); see also United States v.Buford [(M.D. Tenn. 2009)] 623 F.Supp.2d 923, 927 . . .(. . . the extension of the good-faith exception would cause `perverse results' in that case)."[16] From among the collection of cases addressing the issue, we believe those decisions applying the good faith exception are better reasoned.
Looking to cases which have refused to apply the good faith exception in this situation, we find their reasoning lacking. The opinion of the Ninth Circuit in U.S. v. Gonzalez,supra, 578 F.3d. 1130 (Gonzalez), finding the good faith exception not applicable, is a short opinion by a three-judge panel, which, with little analysis, declares thatGriffith, supra, 479 U.S. 314 controls and that the application of the good faith exception "`violates basic norms of constitutional adjudication,'" by "violating] `the integrity of judicial review' by turning the court into, in effect, a legislative body announcing new rules but not applying them," and "`violating] the principle of treating similarly situated defendants the same' by allowing only one defendant to be the beneficiary of a newly announced rule. [Citation.]" (Gonzalez, at p. 1132.) *Page 1327 
The court in U.S. v. Buford, supra, 623 F.Supp.2d 923, discusses one additional concern — the government's attempt to sever the substantive Fourth Amendment violation from the remedy for the violation by arguing that the "`retroactivity doctrine' co-exists with the `good faith' exception, because `it appears that the law applies retroactively but the remedy applies prospectively, so long as the officer reasonably relied on the law at the time.' [Citation.]" (Buford. at p. 926.) We find these concerns unpersuasive.
First, the concern of the court in Gonzalez, supra,578 F.3d 1130 that application of the good faith exception in this context would violate the principle of treating similarly situated defendants the same by allowing only one defendant to be the beneficiary of a newly announced rule, is misplaced. HadGant, supra, 556 U.S. ___ [129 S.Ct. 1710] considered and applied the good faith exception, Gant himself would not have benefitted from the court's departure from decades of case law. Similarly situated defendants, those whose cases arose after the Gant decision and whose officers had therefore not relied upon prior case law, would reap the benefits of Gant. Those whose cases arose prior toGant, and whose officers did rely in good faith upon prior precedent, would rightfully not gain the benefit of its application. Such a result properly balances concerns regarding "norms of constitutional adjudication" and "the integrity of judicial review," as the new rules announced by the court would be applied in an evenhanded manner that appreciates the court's prior precedent finding that exclusion of evidence is a last resort and should be indulged in only if its primary purpose of deterring police misconduct would be served.
Similarly, application of the good faith exception in this context would not turn the court into a legislative body by having it announce new rules but not apply them, as feared by the Gonzalez court. The rules of Gant
regarding limitations upon searches of vehicles incident to the arrest of a recent occupant would be applied to all defendants, prospectively and retroactively (if their cases were still pending when Gant was decided); only the remedy available would differ, depending upon when the search occurred.
The other major concern raised by Gonzalez, supra,578 F.3d 1130 and other cases that have refused to apply the good faith exception for Gant violations is the severance of the substantive Fourth Amendment violation from its remedy, necessary if the good faith exception were applied. As the court recently explained in Herring, supra, 555 U.S. at p. [129 S.Ct. at p. 700][17]: "The fact that a Fourth Amendment violation occurred — i.e., that a search or arrest was unreasonable — does not necessarily mean that the *Page 1328 
exclusionary rule applies. [Citation.] Indeed, exclusion `has always been our last resort, not our first impulse, [citation], and our precedents establish important principles that constrain application of the exclusionary rule, [¶] First, the exclusionary rule is not an individual right and applies only where it `"results[s] in appreciable deterrence."' [Citation.] We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. [Citations.]" Thus each and every time the good faith exception to the application of the exclusionary rule is implemented, the remedy is necessarily divorced from the Fourth Amendment violation. Severance of the Fourth Amendment violation from its remedy is at the heart of the good faith exception to the application of the exclusionary rule. That severance cannot be used as a basis for rejecting the application of the good faith doctrine in the present context without necessarily undermining the entire basis of the exception. The Supreme Court clearly has not contemplated the demise of the good faith exception in its recent decisions.
To the contrary, the court has expanded the scope of the good faith exception, and recently has strongly endorsed the reasons supporting its application. For example, the court inHerring emphasized the requirement of deterrence of future police misconduct as a prerequisite to the application of the exclusionary rule. "[W]e have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future. [Citations.] [¶] In addition, the benefits of deterrence must outweigh the costs. [Citation.]" (Herring, supra,555 U.S. at p. ___ [129 S.Ct. 695 at p. 700].) The court explained the costs of the application of the exclusionary rule, "The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free — something that `offends basic concepts of the criminal justice system.' [Citation.] `[T]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application.' [Citations.]" (Id. at p. ___ [129 S.Ct. at p. 701].) The analysis of the deterrent effect in any given case "varies with the culpability of the law enforcement conduct." (Ibid.) As the court indicated, "Similarly, in Krull we elaborated that `evidence should be suppressed "only if it can be saidthat the law enforcement officer had knowledge, or may properlybe charged with knowledge, that the search was unconstitutionalunder the Fourth Amendment." `[Citation.]" (Ibid., italics added.) Ultimately, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." (Id. at p. ___ [129 S.Ct. at p. 702].)
Application of well-established precedent regarding the exclusionary rule and its good faith exception precludes suppression of the evidence in this case. As the court acknowledged in Gant, supra, 556 U.S. ___
[129 S.Ct. 1710], Belton, supra, 453 U.S. 454 had "been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no *Page 1329 
possibility the arrestee could gain access to the vehicle at the time of the search," even to the extent that "the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding." (Gant, supra, at pp. ___, ___, fn. 11 [129 S.Ct. at pp. 1718, 1723, fn. 11].)[18] Under these circumstances it simply cannot be said that the police in the present case had knowledge, or could properly be charged with knowledge, that their action in conducting the search of defendant's car under the search-incident-to-arrest exception was unconstitutional. Exclusion of the evidence found in defendant's car would therefore not deter future police misconduct and the exclusionary rule should not be applied.[19]
B. Inventory Search.
The prosecution argues that the search of defendant's car was also valid as an inventory or impound search. Such searches are an exception to the search warrant requirement, but only if they are conducted pursuant to "standardized criteria" or an "established routine," that is, if the police agency has a policy regarding conducting such searches and if the policy is followed in the particular case. (Colorado v. Bertine
(1987) 479 U.S. 367, 374-375, fn. 6 [93 L.Ed.2d 739,107 S.Ct. 738]; Florida v. Wells (1990) 495 U.S. 1, 4
[109 L.Ed.2d 1, 110 S.Ct. 1632]; People v. Williams (1999)20 Cal.4th 119, 126 [83 Cal.Rptr.2d 275, 973 P.2d 52].) Defendant argues that the search of his car in the present case does not fall within this exception as there is no evidence in the record that the police had such a policy, or that they followed it in the present case. Defendant is correct.
The trial court noted the lack of evidence presented regarding the justification of the warrantless search as an inventory or impound search, stating "The impound [sic] inventory was a little bit sloppy; . . . there was no testimony that the impound was done pursuant to standardized departmental policies." The court nevertheless found that the warrantless search was valid as an impound or inventory search, relying upon "the California Vehicle Code statutes that permit a police officer to impound a vehicle when a driver is driving on a suspended license," apparently referring to Vehicle Code section 22651, subdivision (p). The prosecutor did not rely upon Vehicle Code section 22651, subdivision (p) as supplying the missing link required by Colorado v. Bertine, supra,479 U.S. 367; the district attorney in fact seemed totally oblivious to the requirements of Bertine.[20] *Page 1330 
There is authority supporting the magistrate's position. InPeople v. Green (1996) 46 Cal.App.4th 367, 375
[54 Cal.Rptr.2d 12], the court held that Vehicle Code section 22651, subdivision (p), "provide[s] the required standard impound procedures . . . ." In that case, however, there was evidence that the officer conducted an inventory search of the automobile "after deciding to impound it." (Green, at p. 374.) The court noted that "[t]here [was] no indication that the inventory search of the car was merely a `ruse' to try to discover evidence of criminal activity, nor [was] there any indication that the search exceeded the scope of its protective purposes." (Ibid.) We note that Justice Johnson dissented in theGreen decision, indicating that United States Supreme Court authority requires law enforcement agencies to establish standardized procedures for conducting inventory searches, and that a vehicle code section authorizing the impound of a car does not suffice for that purpose. (Id. at pp. 375-376 (dis. opn. of Johnson, J.).)
The California Supreme Court denied review in Green and has cited Green in one subsequent case, In reArturo D. (2002) 27 Cal.4th 60, 76, footnote 17 [115 Cal.Rptr.2d 581, 38 P.3d 433]. The court's citation ofGreen in the Arturo D. opinion, however, was only for the general proposition that if a driver is arrested, "in many instances the vehicle also would be impounded and would be subject to an inventory search . . . ." (Ibid.) TheArturo D. decision did not address the issue of the sufficiency of a Vehicle Code section authorizing an impound upon the driver's arrest as evidence of a routine or standard practice of a police agency regarding conducting such impound searches, as required by Colorado v. Bertine, supra,479 U.S. 367. Indeed, the California Supreme Court's decision inPeople v. Williams, supra, 20 Cal.4th at p. 127, makes it unlikely that they would so broadly interpret section 22651, subdivision (p). In Williams, the court noted thatFlorida v. Wells, supra, 495 U.S. at pages 4-5 had concluded "that the trial court should have suppressed the evidence because police had `no policy whatever with respect to the opening of closed containers encountered during an inventory search.' [Citation.]" (Williams, supra,20 Cal.4th at p. 126.) Such a policy was required under Colorado v.Bertine, supra, 479 U.S. 367, as "`an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory.' [Citation.]" (Williams, at p. 126.) Thus, theWilliams court found a search could not be justified as an inventory search where "the record indicates that the police had a policy requiring them to inventory the contents of a vehicle before towing it, but, as in Wells, the record contains `no evidence of any . . . policy on the opening of closed containers.' [Citation]" (Williams, supra, at pp. 126-127.) *Page 1331 
The Williams court required that "the record must at least indicate that police were following some `standardized criteria' or `established routine' when they elected to open the containers [citation] . . . ." (People v. Williams,supra, 20 Cal.4th at p. 127.) It would seem highly unlikely that the court would find a Vehicle Code section that simply authorizes the impounding of a vehicle sufficient to meet the requirement, even generally, of a police policy regarding conducting inventory searches.[21]
The record in the present case, as noted by the magistrate, is sloppy with regard to the impound or inventory exception. There was no testimony by any of the officers involved indicating that they intended to, or did, conduct an impound or inventory search. Sergeant Malone testified that he returned to the vehicle to search it while other officers continued to chase defendant, and found it unoccupied and locked. He was unable to search the car until some 15 to 20 minutes later, when the tow truck arrived and unlocked the vehicle for him. From this limited testimony, it appears that Malone intended to search the car when he initially returned to it, but was unable to do so as it was locked. With no clarification in the record, we cannot merely assume that Malone intended to initially conduct an impound search rather than a generalized search for evidence of a crime. On cross-examination of Sergeant Malone, defense counsel did inquire as to why Malone searched the car, but Malone responded that he did not search the car and was only present when it was being searched. The officer who actually conducted the subsequent search, Deputy Tim Allen, did not testify. From the record, it is unclear whether the tow truck was called to impound the car or to unlock it so a search could be conducted.
This sloppy record, including the lack of evidence of the purpose of the search, along with the failure to elicit testimony regarding the police agency's routine or standard policies regarding impound searches, makes it difficult to sustain the search under this search warrant exception. Under these circumstances, even assuming the correctness of theGreen decision (People v. Green, supra,46 Cal.App.4th 367), we cannot uphold the search of defendant's vehicle as an impound or inventory search.[22] *Page 1332 
 III. DISPOSITION
Due to the application of the good faith exception to the exclusionary rule, the evidence seized from defendant's vehicle during the warrantless search incident to his arrest should not be suppressed, and defendant's motion to suppress was therefore properly denied. The judgment is affirmed.
Reardon, Acting P. J., and Rivera, J., concurred.
[1] All further statutory references are to the Penal Code unless otherwise noted.
As a part of the negotiated disposition, the prosecution dismissed the remaining charge of resisting an officer in the performance of his duties (§ 148, subd. (a)(1)) and the special allegations of a strike prior (§ 1170.12) and two prior prison terms (§ 667.5, subd. (b)).
[2] As defendant's appeal raises issues relating solely to his motion to suppress, only the factual and procedural histories relating to that motion are discussed.
[3] Pursuant to the search-incident-to-arrest exception, the police could search the entire passenger compartment, including containers therein. (Belton, supra,453 U.S. at p. 460.)
[4] The court both limited the search incident to arrest of a vehicle by returning the rule to its underpinnings inChimel, circumscribing its scope to that area within the arrestee's immediate control, and expanded it beyond that permitted under Chimel v. California, supra,395 U.S. 752 by permitting the passenger compartment to be searched also if it was reasonable to believe that the area contained evidence relating to the crime of arrest. The court recognized that in so expanding the permissible premise of the search, it was stepping outside the proscribed limits of searches incident to arrest that the Chimel court had set forth many decades ago, stating, "Although it does not follow from Chimel, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is `reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' [Citation.]" (Gant,supra, 506 U.S. at p. ___ [129 S.Ct. at p. 1719], italics added.)
[5] The Attorney General does not contend that it was reasonable to believe that evidence relating to the charge of resisting arrest would be located in the vehicle.
[6] This comment was made in response to defense counsel's argument that her inquiry regarding the officer's probable cause to arrest defendant for not having a valid license was relevant because the prosecution was relying upon the search-incident-to-arrest exception.
[7] Perhaps because Gant. supra, 556 U.S. ___
[129 S.Ct. 1710] had not yet been decided, no evidence was adduced regarding why the police searched the car, or what they were looking for.
[8] Many would argue that Gant, supra, 556 U.S. ___
[129 S.Ct. 1710] in fact disapproved a practice the Supreme Court had sanctioned in prior cases.
[9] Undoubtedly the court in Griffith, supra,479 U.S. 314 did not address the issue of the application of the exclusionary rule because the case did not involve a Fourth Amendment violation issue.
[10] Interestingly, the court in Leon, supra,468 U.S. 897 relied upon a prior decision, United States v.Peltier (1975) 422 U.S. 531 [45 L.Ed.2d 374,95 S.Ct. 2313], dealing with the issue of the retroactivity of prior decisional law regarding the application of the exclusionary rule itself, under the then existing rules of retroactivity. As the court in Peltier stated, "The teaching of these retroactivity cases is that if the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the `imperative of judicial integrity' is not offended by the introduction into evidence of that material even if decisions subsequent to the search or seizure have broadened the exclusionary rule to encompass evidence seized in that manner." (Peltier, supra, at p. 537.) (See discussion post.) As indicated inGriffith'?, review of prior retroactivity cases (Griffith, supra, 479 U.S. 314), this discussion inPeltier is a reference to one of the three factors that had previously been considered in determining retroactivity.
[11] We also note that the Supreme Court has recently further limited the application of the exclusionary rule, finding that it does not apply to evidence seized pursuant to a warrant despite a violation of knock-notice law (Hudson v.Michigan (2006) 547 U.S. 586 [165 L.Ed.2d 56,126 S.Ct. 2159]) and applying the good faith exception to police reliance upon information wrongly in a database due to the negligence of law enforcement. (Herring v. United Slates (2009)555 U.S. ___ [172 L.Ed.2d 496, 129 S.Ct. 695] (Herring).) In Herring, the court emphasized that it was divorcing the Fourth Amendment violation from the remedy, reiterating that "[t]he fact that a Fourth Amendment violation occurred —i.e., that a search or arrest was unreasonable — does not necessarily mean that the exclusionary rule applies. [Citation.] Indeed, exclusion `has always been our lastresort . . . .'" (Herring, at p. ___ [129 S.Ct. at p. 700], some italics added.)
[12] If Johnson's "`clear break'" exception to retroactivity were still controlling, the issue of the application of the good faith exception regarding decisions of the United States Supreme Court would potentially be moot, as application of that exception would eliminate the Fourth Amendment violation and render consideration of the remedy of exclusion of evidence unnecessary.
[13] Justice O'Connor also recognized that "the Court today, as it has done in the past, divorces the suppression remedy from the substantive Fourth Amendment right. [Citation.]" (Krull, supra, at p. 368, italics added.)
[14] We have found no Supreme Court authority on the application of the good faith exception per se to reliance upon the prior established state of decisional law regarding the legality of police conduct under the Fourth Amendment. Neither party has brought any such authority to our attention.
[15] We note that the issue of the application of the good faith exception of the exclusionary rule was not raised inGant, supra, 556 U.S. ___ [129 S.Ct. 1710] and thus no direct guidance on this issue is presented in the court's decision there.
[16] The only published opinion in California on this issue (split opinion finding good faith exception applicable), from the Third District, has been granted review. (People v.Branner (2009) 180 Cal.App.4th 308 [103 Cal.Rptr.3d 256], review granted Mar. 10, 2010, S179730.)
[17] As previously noted, in Herring, 555 U.S. ___
[129 S.Ct. 695], the court applied the good faith exception when officers rely upon information in a computer database, even if errors in that data are due to the negligence of other law enforcement officers.
[18] In his reply brief, defendant contends that the search of his vehicle was not valid even under the state of the law before the Gant decision, as the record of the motion to suppress does not support a finding that the search was contemporaneous in time and place with the arrest, nor that he was a "recent occupant" of the vehicle. While the record is sketchy in this regard, the search apparently occurred within some 15 to 20 minutes after Sergeant Malone returned to defendant's vehicle with the intent of conducting a search (about five or ten minutes after the officers began chasing defendant). Defendant was arrested by other officers in the meantime. This temporal relationship was sufficient to justify the police in believing that defendant was a recent occupant of the vehicle, and to support their reasonable belief that under then-existing case law a search of the car incident to his arrest was permissible. As Justice O'Connor summarized the pre-Gant state of the law in her concurring opinion in Thornton v. United States, supra, 541 U.S. at page 624, "lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of Chimel v. California, supra,395 U.S. 752.
[19] In reaching this conclusion, we are in agreement with the 10th District's decision in U.S. v. McCane, supra,573 F.3d 1037.
[20] We note that the opposition to the motion to suppress as renewed after the information was filed did not even raise the theory of the search being conducted as an impound or inventory search, relying solely upon the search-incident-to-arrest exception to justify the warrantless search. When the motion was orally argued, the prosecution again relied solely on the search-incident-to-arrest theory. This election of theory might have been founded in the sketchy record regarding the impound or inventory search.
[21] The firearm defendant sought to suppress in the present case was found in the center console of the vehicle. Whether or not the console would be considered a container for these purposes, we read People v. Williams, supra,20 Cal.4th 119 more generally as reaffirming the requirement inColorado v. Bertine, supra, 479 U.S. 367
[93 L.Ed.2d 739, 107 S.Ct. 738] of a specific police policy regarding the conduct of inventory searches.
[22] We further note that the prosecution has not argued, either below or on appeal, that the evidence would inevitably have been discovered pursuant to an impound or inventory search and that it should therefore be admissible despite any Fourth Amendment violation. The court hearing the renewed motion after the information was filed did reference this theory in passing. *Page 1333