(235 P.3d 1260)
No. 101,263

STATE OF KANSAS, *Appellee*, v. DAVID CHRISTOPHER KARSON,
*Appellant*.

Opinion filed July 30, 2010.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Ramsey A. Olinger*, legal intern, *Stephen M. Howe*, district attorney, and *Steve Six*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON, J., and BUKATY, S.J.

LEBEN, J.: David Karson's pickup truck was searched in 2007 after a police officer arrested him on a warrant. At the time, pretty much all courts in the United States—and certainly those with jurisdiction over Kansas police officers—said it was legal to search the passenger compartment of a car any time one of its occupants was arrested. Drugs and drug paraphernalia were found in Karson's truck, and he was convicted of drug charges.

But in 2009, the United States Supreme Court concluded that a vehicle could not be searched merely because an occupant had been arrested when, as was true in Karson's case, the defendant was already handcuffed and in the back of a patrol car. Karson now argues that the evidence against him should have been excluded because his constitutional rights were violated. But the purpose of the exclusionary rule is not served here: we cannot fault law-enforcement officers for following the law as it was being uniformly interpreted by the courts at the time. The purpose of the exclu-

sionary rule is to deter wrongful conduct by police, not to suggest that they should be leery of following what courts have told them is the law. We therefore conclude that the good-faith exception to the exclusionary rule applies here, and we affirm the defendant's convictions.

The facts of Karson's case are simple and undisputed. Karson parked his pickup at a Quik Trip, where an officer performed a routine check on the license plate. During that check, the officer found that it was registered to Karson and that Karson had an outstanding arrest warrant for a traffic violation. After securing Karson in the back of the officer's patrol car, the officer searched Karson's pickup.

Let's review the legal landscape at the time of the search. The Fourth Amendment protects our right to be secure in our persons, houses, papers, and effects against unreasonable searches and seizures. Caselaw interpreting the Fourth Amendment tells us that a search without a warrant is unreasonable unless it falls within one of several limited, well-defined exceptions to the warrant requirement. *State v. Thompson*, 284 Kan. 763, Syl. ¶ 11, 166 P.3d 1015 (2007). Because Section 15 of the Kansas Constitution Bill of Rights has been interpreted to provide the same protection as the Fourth Amendment, *Thompson*, 284 Kan. 763, Syl. ¶ 15, we are primarily guided by United States Supreme Court decisions when determining the somewhat subjective question of what is an unreasonable search. As of 2007, there were three United States Supreme Court decisions relevant to Karson's situation: *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969); *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981); and *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004).

In *Chimel*, the Court ruled that officers couldn't search an entire home when arresting the owner on a burglary charge. The Court held that a search incident to arrest was limited to a search of the person "to remove any weapons" and "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." 395 U.S. at 763. Under the same rationale of officer safety and preserving evidence, an officer could also

search the area around an arrestee for weapons or evidence because those items could easily be reached. But the Court held that an officer could not justify "routinely searching any room other than that in which an arrest occurs—or, for that matter, searching through all the desk drawers or other closed or concealed areas in that room itself." For that sort of search, a warrant would be required. 395 U.S. at 763.

In *Belton*, an officer stopped a car for speeding and smelled burnt marijuana when he approached the car to check the driver's license and registration. The officer had all four men in the car step out, and he then searched the passenger compartment of the car, including a closed pocket in Belton's jacket, where he found cocaine. Much as *Chimel* had held that an officer arresting a person in a home couldn't open a drawer searching for evidence, the New York Court of Appeals held that an officer couldn't search the contents of a car—or the pocket of a jacket found there—without a warrant after the occupants had been removed. But the Supreme Court didn't agree, even though it also didn't overrule *Chimel*. 453 U.S. at 457-58, 460.

The Court noted that lower courts had split on whether an officer could search a car incident to an arrest when the arrestee was no longer in the car. The Court concluded that both citizens and police needed a "workable definition of 'the area within the immediate control of the arrestee.'" 453 U.S. at 460. In order to create a workable guide, the Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460. The Court also ruled that the officer could search "any containers found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach. [Citations omitted.]" 453 U.S. at 460. Thus the Court approved the search of Belton's zippered jacket pocket, even though Belton was no longer in the car. 453 U.S. at 459-61.

In *Thornton*, two justices criticized the theoretical tension between *Chimel*, which based its exception to the warrant requirement on the needs either to protect officer safety or to preserve

evidence that might easily be concealed or destroyed. 541 U.S. at 625-33 (Scalia, J., concurring, joined by Ginsburg, J.). But a five-member majority applied *Belton* and decided that even when the person arrested was outside the car when the officer first approached him, the *Belton* rule allowed search of the car after the arrest. The Court said that "[t]he need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated." Therefore, "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest." 541 U.S. at 622-24.

So as of 2007, when an officer searched Karson's pickup, the Court had announced a rule in *Belton* that allowed the search of the passenger compartment, including containers found there, whenever an occupant had been arrested. And in *Thornton*, the Court had applied that rule even when the person arrested had first been approached by an officer outside the car, given the need for a clear rule police officers could follow.

How was the *Belton* rule understood in 2007 by courts below the United States Supreme Court? Both the Kansas Supreme Court and the United States Court of Appeals for the Tenth Circuit, the two courts whose decisions effectively govern the work of police officers in Kansas, concluded that *Belton* set out a clear rule. As our Supreme Court reported in 1995, 14 years after *Belton*, "Kansas courts have consistently applied *Belton* to allow an officer to search the passenger compartment of an automobile when its occupant is arrested." *State v. McClain*, 258 Kan. 176, 184, 899 P.2d 993 (1995). Similarly, the Tenth Circuit routinely upheld automobile searches incident to arrest even when the defendant had been secured outside the vehicle before the search and without regard to the nature of the offense for which the defendant had been arrested. *E.g.*, *United States v. Humphrey*, 208 F.3d 1190, 1202 (10th Cir. 2000); *United States v. Lacey*, 86 F.3d 956, 971 (10th Cir.), *cert. denied* 519 U.S. 944 (1996).

So far we have discussed only cases about the reasonableness of an automobile search incident to arrest under the Fourth Amendment or its Kansas counterpart. But there's also one statutory issue that was in play for a time in Kansas that we must mention. A year after our Supreme Court had noted in *McClain* the consistent application of *Belton* to allow car searches incident to arrest, the court recognized that a Kansas statute, K.S.A. 22-2501, contained some limits on police authority not found in *Belton*. See *State v. Anderson*, 259 Kan. 16, 19-23, 910 P.2d 180 (1996). That statute limited the permissible scope of searches incident to arrest to ones needed for officer protection, to prevent escape, or to discover "the fruits, instrumentalities, or evidence of *the* crime." (Emphasis added.) The driver in *Anderson* was stopped for a traffic infraction but arrested on an outstanding warrant for another traffic offense. The officer who searched the vehicle had no safety concerns and wasn't looking for any evidence related to the traffic offense. Therefore, the court held that the search was outside the officer's *statutory* authority and thus illegal because it related neither to officer safety nor to "the crime" of arrest. 259 Kan. at 19-20, 24. Later cases confirmed that searches incident to arrest were statutorily limited, when officer safety or prisoner escape weren't at issue, to "the crime" for which the person had been arrested. *E.g.*, *State v. Conn*, 278 Kan. 387, Syl. ¶ 2, 99 P.3d 1108 (2004) (search of car not authorized on arrest for driving without valid license or insurance).

The 2006 Kansas Legislature addressed that statutory hurdle to the search for evidence in a car unrelated to an occupant's specific crime of arrest. It amended K.S.A. 22-2501 to allow search for "evidence of *a* crime" rather than "evidence of *the* crime." (Emphasis added.) L. 2006, ch. 211, sec. 8. Before the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009), no issue involving the amended K.S.A. 22-2501 had reached the Kansas Supreme Court. But our court had concluded that the legislature intended to change the rule in *Anderson* so that searches incident to an arrest would extend to searches for evidence of any crime, as allowed under *Belton*. *State v. Henning*, 38 Kan. App. 2d 706, 171 P.3d 660 (2007), *rev'd* 289 Kan. 136, Syl. ¶ 6, 209 P.3d 711 (2009) (reversed in light of *Gant*). Accord

*State v. Jones*, 2009 WL 248100, at *3 (Kan. App. 2009) (unpublished opinion), *rev'd and remanded based on* Gant *and* Henning (Kan. October 5, 2009) (unpublished summary order); *State v. Cannizzo*, 2008 WL 4850003, at *4 (Kan. App. 2008) (unpublished opinion).

Thus, as of 2007 when Karson's car was searched, the *Belton* rule had been recently reaffirmed by the United States Supreme Court in *Thornton*. Both the Kansas Supreme Court and the Tenth Circuit had consistently applied *Belton*, and the Kansas Legislature had amended K.S.A. 22-2501 so that the statute would allow a search to the extent allowed by *Belton*. Any officer in Kansas would have reasonably understood that he or she could search a car incident to arrest.

Later, in 2009, the United States Supreme Court decided *Gant*, which is for all practical purposes indistinguishable from Karson's case. The Court held that, with one exception, you can't search a car merely because an occupant has been arrested when the arrestee has already been secured outside the car. The single exception is when it's reasonable to expect that evidence relevant to the crime of arrest may be found in the car. 556 U.S. at 341-43. Under *Gant*, the search of Karson's car can't be upheld under the search-incident-to-lawful-arrest exception to the warrant requirement: Karson had been secured in a police car before his vehicle was searched, and there was no reason to believe that any evidence would be found in the vehicle that was related to the crime for which he was arrested (a preexisting traffic warrant).

Karson argues that the *Gant* holding must be applied to all other cases that, like his, were still pending on appeal when *Gant* was decided. Karson is right about that. See *Griffith v. Kentucky*, 479 U.S. 314, 327-28, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). But that only answers whether the officer's conduct was unreasonable under the Fourth Amendment: It was. That doesn't tell us the answer to a second question: Must the evidence found from this illegal search be excluded at trial?

The United States Supreme Court has made clear in several cases that even though a search may have been constitutionally impermissible, the evidence may yet be admissible. In *United*

*States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984), the Court established the good-faith exception to the exclusionary rule, declining to exclude evidence when police reasonably relied upon a warrant later declared invalid. The rationale? The exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." 468 U.S. at 919. In its exclusionary-rule cases, the Court has applied the rule and allowed the admission of evidence obtained in violation of the defendant's constitutional rights when police relied upon:

- an apparently valid search warrant that was later held not to have been based on sufficient probable cause for its issuance by a magistrate, *Leon*, 468 U.S. at 926;
- an apparently valid search warrant that was later held invalid due to the magistrate's failure to cross out extraneous language on the warrant when the magistrate had told the officer executing the warrant that the magistrate would conform the draft warrant presented to him to legal requirements, *Massachusetts v. Sheppard*, 468 U.S. 981, 82 L. Ed. 2d 737, 104 S. Ct. 3424 (1984);
- an erroneous record entered by a court employee stating that a warrant was outstanding for a person's arrest, *Arizona v. Evans*, 514 U.S. 1, 131 L. Ed. 2d 34, 115 S. Ct. 1185 (1995);
- an erroneous record entered by a police record keeper stating that a warrant was outstanding for a person's arrest, *Herring v. United States*, 555 U.S. 135, 172 L. Ed. 2d 496, 129 S. Ct. 695 (2009); and
- an apparently valid statute that was later held unconstitutional, *Illinois v. Krull*, 480 U.S. 340, 349-53, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987).

In the most recent of these decisions, *Herring*, the Court extended its earlier holding in *Evans*, in which police reliance on negligent record keeping by a court employee was held objectively reasonable, to police reliance on negligent record keeping by a fellow law-enforcement employee. The Court noted that the benefits of deterrence must outweigh the cost of excluding evidence

for the exclusionary rule to be applied. *Herring*, 555 U.S. at 141. Of course, what we're trying to deter is future constitutional violations, an objective the Court has said is furthered only when officers either have knowledge that their conduct is unconstitutional or may properly be charged with that knowledge. 555 U.S. at 143. Thus, when the police record-keeping error resulted from a single negligent act, with no evidence of systematic record-keeping errors, the Court concluded that the police error was not sufficiently culpable to merit the exclusion of evidence to deter similar mistakes in the future: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." 555 U.S. at 144.

The essence of the Court's good-faith cases is that the exclusionary rule is based on its deterrence of misconduct, and when officers are acting in an objectively reasonable manner, there's no misconduct to deter by excluding evidence in criminal trials. Surely police reliance on settled caselaw is objectively reasonable.

The Court's cases have also made clear that it ordinarily makes no sense to apply the exclusionary rule to mistakes of those outside law enforcement, whether it's a judicial officer, *Leon* and *Sheppard*, a judicial employee, *Evans*, or the legislature, *Krull*. When, as was the situation for caselaw interpreting *Belton*, there is a well-settled, established understanding within which officers have acted, "excluding evidence based on judicial error would serve no deterrent purpose." *United States v. McCane*, 573 F.3d 1037, 1045 (10th Cir. 2009).

Beyond the bright-line rule of *Belton*, we noted previously that there was for a time a statutory limitation on police authority to perform searches in Kansas. But that was resolved—as of 2007— with a 2006 statutory amendment to K.S.A. 22-2501 that broadened an officer's search authority to the constitutional limit set out in *Belton*. Our court so held, *Henning*, 38 Kan. App. 2d at 716, 719-20, 722-23, and *Krull* counsels that the good-faith exception to the exclusionary rule applies when an officer relied on a facially valid statute that was later held unconstitutional.

We conclude that a police officer who conducts a search in reasonable reliance upon the settled caselaw of the Kansas Supreme Court and the United States Court of Appeals for the Tenth Circuit has not engaged in misconduct even if a later United States Supreme Court decision deems the search invalid. Accordingly, under the good-faith exception to the exclusionary rule, evidence found in such a search is not excluded based on the search's invalidity.

On this issue, we are in accord with the majority of courts, which have concluded that the good-faith exception applies to searches conducted in accordance with the prevailing understanding of the *Belton* rule before *Gant* was decided. Compare *McCane*, 573 F.3d at 1045 (applying good-faith exception); *United States v. Davis*, 598 F.3d 1259 (11th Cir. 2010) (same); *United States v. Allison*, 637 F. Supp. 2d 657 (S.D. Iowa 2009) (same); *United States v. Lopez*, 2009 WL 3112127 (E.D. Ky. 2009) (unpublished opinion) (same); *United States v. Schuttpelz*, 2010 WL 200827 (E.D. Mich. 2010) (unpublished opinion); *United States v. Lee*, 2009 WL 3762404 (W.D. Mo. 2009) (unpublished opinion) (same); *United States v. Gray*, 2009 WL 4739740 (D. Neb. 2009) (unpublished opinion); *United States v. Southerland*, 2009 WL 5149263 (E.D.N.C. 2009) (unpublished opinion); *United States v. Grote*, 629 F. Supp. 2d 1201 (E.D. Wash. 2009) (same); *People v. Henry*, 184 Cal. App. 4th 1313, 110 Cal. Rptr. 3d 85 (2009) (same); *Brown v. State*, 24 So. 3d 671 (Fla. Dist. App. 2009) (same); *Meister v. State*, 912 N.E.2d 412, 418 n.1 (Ind. App. 2009) (same); *State v. Baker*, 229 P.3d 650 (Utah 2010) (same); *State v. Riley*, 154 Wash. App. 433, 225 P.3d 462 (2010) (same); *State v. Dearborn*, 786 N.W.2d 97 (Wisc. 2010), with *United States v. Gonzalez*, 578 F.3d 1130 (9th Cir. 2009) (declining to apply good-faith exception); *United States v. Peoples*, 668 F. Supp. 2d 1042 (W.D. Mich. 2009) (same); *United States v. Buford*, 623 F. Supp. 2d 923 (M.D. Tenn. 2009) (same); *People v. McCarty*, 229 P.3d 1041 (Colo. 2010) (same); *United States v. Debruhl*, 993 A.2d 571 (D.C. 2010) (same); *Valesquez v. Com.*, 2010 WL 567325, at *3 (Ky. App. 2010) (unpublished opinion) (same); *People v. Mungo*, 792 N.W.2d 763 (288 Mich. App. 167) (same); *State v. Johnson*, 2010 WL 2730593, at *6-13 (Mo. App. 2010) (unpublished opinion) (same); *State v. Harris*,

154 Wash. App. 87, 100-01, 224 P.3d 830 (2010) (same). We find the majority's approach (exemplified by the Tenth Circuit's opinion in *McCane*) squarely in line with the Supreme Court's application of the good-faith exception—and certainly with the rationale for that rule set out in *Herring*.

Karson has argued that we must rule in his favor to uphold the retroactive application of Supreme Court decisions to cases then pending, and we acknowledge that some courts have agreed with his position. *E.g.*, *Gonzalez*, 578 F.3d at 1132-33; *Johnson*, 2010 WL 2730593, at *6-8. But as the Court noted in *Herring*, "The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." 555 U.S. at 140. There are two issues to be considered here, not just one. We agree with Karson that the search of his car was unreasonable under *Gant*—and thus contrary to the Fourth Amendment. We do not agree, however, that the evidence the officer found there should be excluded under the Court's exclusionary-rule jurisprudence. See *Krull*, 480 U.S. at 360, 368-69 (applying good-faith exception to allow admission of evidence obtained in reliance on statute declared unconstitutional over dissenting opinion arguing for application of retroactivity doctrine).

The judgment of the district court is affirmed.