NOT DESIGNATED FOR PUBLICATION

No. 119,558

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JAY BLANCO,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; STEPHEN R. TATUM, judge. Opinion filed December 28, 2018. Affirmed.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Peter L. Conley*, of Johnson County Public Defender's Office, for appellee.

Before MALONE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: The district court granted Jay Blanco's motion to suppress evidence discovered during a warrantless search of his vehicle after his driving under the influence (DUI) arrest. The State has filed an interlocutory appeal. We affirm.

On December 20, 2017 at 10:23 p.m., Olathe Police Officer Drew Fitzpatrick responded to a call about an intoxicated driver. At 10:26 p.m., Fitzpatrick observed a dark-colored vehicle, driving with its headlights off, turn into a parking lot. The vehicle matched the description provided by dispatch. Fitzpatrick activated his emergency lights in an attempt to stop the vehicle. The driver jumped the curb with the vehicle and struck a

1

tree trying to escape the lot. As the vehicle passed, Fitzpatrick got a good look at the driver's face. Because of the heavy traffic on the road and the department's pursuit policy, Fitzpatrick did not pursue the vehicle.

At 10:31 p.m., dispatch advised officers that a caller reported the vehicle that fled Officer Fitzpatrick was parked at The Other Place, a tavern in the same parking lot as the incident five minutes before. Officers Shane Bryan and Kevin Dornes reached the location two minutes later. When they arrived, Blanco was standing near the railing that encompasses The Other Place's patio area. The black Mercury Sable that fled from Officer Fitzpatrick was approximately 20 yards away. When Blanco saw the officers, he began walking away from them, looking back as he walked. Officer Dornes motioned toward Blanco to return to the vehicle but Blanco continued toward the front of the tavern and got into the back seat of his girlfriend's, Ximena Cruz, vehicle.

Officer Bryan told Blanco to get out of the vehicle, to which Blanco replied, "I'm wasted." From around one and a half feet away, Bryan smelled a heavy odor of consumed alcohol on Blanco's breath and noticed that his eyes were bloodshot. Blanco was argumentative with the officers and stumbled as he walked. He did not have his driver's license on him and he denied driving. As the officers escorted Blanco toward the patrol car to conduct field sobriety tests, he struggled to maintain his balance and, at one point, tried to break free of the officers' grips and run. The officers grabbed Blanco and arrested him for DUI and resisting arrest. As the officers escorted Blanco to their patrol car, Officer Fitzpatrick arrived and identified Blanco as the driver who had fled from him earlier. Before placing him in the patrol car, the officers searched Blanco and found the keys to the Sable in his front pocket. The officers verified that the Sable was registered to Blanco.

The officers examined the exterior of the vehicle, which appeared to have fresh damage. The hood of the vehicle was warm to the touch, indicating it had been driven recently. Officers Bryan and Dornes then searched the interior of the vehicle as a search

2

incident to arrest. Bryan searched the driver's side of the vehicle, including the side pockets of the door and the rubbish on the floor. Dornes searched the passenger side, where a backpack sat on the floorboard. He first searched the outer pocket of the backpack and found a digital scale. Inside the bag, he found 155.3 grams of marijuana. The State subsequently charged Blanco with distribution of marijuana, fleeing or attempting to elude a police officer, possession of drug paraphernalia, interference with law enforcement, and DUI.

Blanco moved to suppress evidence discovered in his vehicle, claiming the search violated his rights against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. He asked the district court to disallow any evidence from the search under the exclusionary rule.

The United States Supreme Court, in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), provided two situations in which law enforcement may conduct a warrantless vehicle search incident to a recent occupant's arrest:  (1) the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search; or (2) it is "'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" 556 U.S. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 [2004] [Scalia, J., concurring]). Because officers had already secured Blanco in the patrol car at the time of the search, the legality of the search depended on the district court's interpretation of the second *Gant* exception to the warrant requirement.

Courts have adopted two interpretations of *Gant*'s "it is reasonable to believe" language:  (1) certain offenses provide a categorical link under which officers will always have a reasonable belief that a vehicle contains evidence relevant to the offense; and (2) the Supreme Court provided a standard akin to reasonable suspicion. See *State v. Ewertz*, 49 Kan. App. 2d 8, 11-12, 305 P.3d 23 (2013).

Blanco contended that the *Gant* Court did not intend on creating a categorical link between certain offenses and even if it did, the standard would not apply to DUI. He asserted that with drug possession charges, as analyzed in *Gant*, it is common for drug dealers to carry firearms, so much so that Kansas has enacted special punishments for drug offenses committed with firearms. He contrasted that with the fact that drunk drivers' risk is in their driving and the bulk of the evidence is in the blood alcohol content, which officers cannot discover in a vehicle search.

Blanco cited Judge Malone's concurring opinion in *Ewertz*, 49 Kan. App. 2d at 17, in which he opined that Kansas should reject a per se rule of a categorical link providing officers a right to search based on the nature of the crime of arrest. Judge Malone advocated for Kansas courts to equate *Gant's* "reasonable to believe" language with reasonable suspicion, an objective standard based on the totality of the circumstances, a standard understood by law enforcement. 49 Kan. App. 2d at 17. Judge Malone specifically rejected that courts should apply a categorical link between DUI and the right to search a vehicle, while admitting that during a traffic stop, an officer may develop probable cause for an arrest but observations leading to arrest do not automatically provide reasonable suspicion that evidence may be *inside* the vehicle. 49 Kan. App. 2d at 17.

Blanco contended the officers may have had reasonable suspicion that he had been driving under the influence, but not that any evidence related to the DUI would have been in his car. He noted that the *Ewertz* court found reasonable suspicion existed in *Ewertz*, but distinguished his case on the facts. In *Ewertz*, the odor of alcohol emanated from the vehicle, rather than the defendant's breath, and the officers saw drug paraphernalia in plain view inside her car. However, here, Officer Bryan was clear that he did not smell the odor of alcohol in or near the vehicle and he never shined his flashlight into the vehicle to try to use the plain view doctrine. In addition, Officer Fitzpatrick never saw Blanco holding a drink or anything that would have led him to believe Blanco had an open container in his vehicle. Witnesses never reported that Blanco had any drinks or

contraband with him. Blanco argued that because the officers lacked reasonable suspicion to search his car, the district court rightly suppressed the evidence as fruits of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

The State claimed the search was lawful under both interpretations of *Gant*. The *Ewertz* court cited to cases that both rejected and adopted the categorical link approach. More importantly, the court did not reject the categorical link approach. The court found that the officer searched for open alcohol containers, which qualified as evidence relevant to the DUI arrest. The *Ewertz* court did not reject either approach. Instead, it analyzed the facts of Ewertz' arrest under both approaches.

The State conceded the officers never contacted Blanco while he was in his vehicle, but they claimed that "just moments after he stepped from his vehicle, officers observed indicators of impairment." The State contended that Blanco was trying to distance himself from his vehicle when officers arrived, even ignoring their request to return to his vehicle. The State also asserts that Blanco had not had time to go into another location to drink between the contact with Officer Fitzgerald and the contact with Officers Bryan and Dornes. With no indication that he consumed alcohol in the bar or since the initial contact, the State asserts there was reasonable suspicion to believe that evidence of alcohol consumption would have been in the vehicle.

The State concluded by asserting that even if the district court found the search unlawful, the good-faith exception to the exclusionary rule applied because the officers acted in reasonable reliance on Kansas caselaw.

During the motions hearing, the officers testified to the above facts. The State asked Officers Bryan and Dornes to explain their understanding of why the search was lawful. Officer Bryan explained that it was a search incident to arrest and his understanding of the law was that he could search specifically for evidence of the

5

elements of crime of arrest. Officer Dornes responded he conducted the search as part of the DUI investigation as a search incident to arrest. He indicated he looked for anything suggesting that Blanco had consumed alcohol that night, any evidence contributing to the DUI arrest. Officer Dornes cited *Gant* as the authority that addressed search incident to arrest and "[r]ecovering fruits of being drunk."

The district court granted Blanco's motion. Recognizing that Kansas courts have not yet determined which interpretation of *Gant* to adopt, the district court wrote:

> "This Court does not interpret *Gant* to give officers carte blanche to search a vehicle simply because the driver is arrested for driving under the influence when there is no evidence supporting a reasonable belief there will be evidence of the crime found in the vehicle, i.e., open containers of alcohol."

The court highlighted the fact that Blanco was 20 yards from his vehicle when officers made contact with him and although he exhibited numerous clues to support the arrest for DUI, no reasonable suspicion existed to believe evidence of DUI would be in his vehicle. The court noted the officers saw no open containers in the vehicle before they began the search nor did they smell an odor of alcohol emanating from the vehicle. The court held that the officers lacked reasonable suspicion and so the search was unlawful.

The district court denied the State's assertion that the good-faith exception to the exclusionary rule applied. The United States Supreme Court has recognized the good-faith exception applies when law enforcement acted in reasonable reliance on (1) a search warrant later found invalid; (2) a statute later found unconstitutional; or (3) binding appellate precedent later overruled. See *Davis v. United States*, 564 U.S. 229, 238-39, 241, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). The district court noted that in each exception, the invalidity of the search stemmed from an error by a party other than law enforcement. But here, the officers committed the error in interpretation. The court determined the Fourth Amendment violation had not resulted from reasonable reliance on

6

a later invalidated search warrant, statute, or appellate precedent. Therefore, no established exception to the exclusionary rule applied.

The State filed an interlocutory appeal.

In claiming that the search of Blanco's vehicle was constitutional, the State asserts that the officers only searched for physical evidence of the crime of arrest, according to the *Gant* restrictions. The State also contends that the United States Supreme Court created a categorical link that permits vehicle searches "if the crime of arrest is one which could reasonably be understood to produce physical evidence that could be located in the car." The State notes that even if we adopted the *Gant* interpretation requiring reasonable suspicion, the search was constitutional.

The standard of review for a district court's decision on a motion to suppress has two components. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. We review the ultimate legal conclusion using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). When the material facts supporting a trial court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *Hanke*, 307 Kan. at 827.

The State carries the burden to prove that a search and seizure was lawful. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

For the most part, the facts of the case are not in question. The only difference is the parties' characterization of Blanco's location as officers arrived. The State contends that Blanco was walking away from his vehicle, while Blanco contends he was standing in the grass outside the patio, talking to bar patrons. Officer Bryan testified that upon

arriving, he "observed someone *standing* in the grass outside of the patio area *walking* away from the vehicle." (Emphasis added.) When asked specifically whether Blanco was walking when Bryan saw him, he stated, "He was standing, I believe, by the rail of the patio." Officer Dornes testified that Blanco was in the grass, outside the patio area, talking to bar patrons who were standing inside the tavern railing. According to the testimony of the State's witnesses, Blanco was standing in the grass talking to patrons when they arrived. He was not walking away from or trying to distance himself from his vehicle. Blanco proceeded to walk further from his vehicle as he walked to Cruz' car. Substantial competent evidence supports the district court's finding that Blanco was *standing* outside the patio area of The Other Place about 20 yards from his vehicle.

It seems the State slightly twisted Blanco's movement as a justification for connecting him to his vehicle for search purposes. The significance of this fact is for our determination of whether a DUI arrest made after law enforcement initiated contact with the suspect who was outside the vehicle, not fleeing the vehicle, would allow for a vehicle search. The district court considered Blanco's distance from his vehicle in determining that although Blanco demonstrated several clues to support his DUI arrest, officers had no reasonable suspicion to believe evidence relevant to the DUI would be in the vehicle.

When reviewing vehicle search cases, the courts tend to refer to the offender as the "recent occupant" of the vehicle. In doing so, most cases refer to an encounter initiated by law enforcement while the offender was in the vehicle and got out at the officer's request. In *Thornton*, 541 U.S. 615, the United States Supreme Court addressed the permissibility of vehicle searches when suspects are "next to" the vehicle, specifically when the officer observed the suspect exit the vehicle. The Court stated the concerns for officer safety and destruction of evidence when the offender flees the vehicle are identical to those in which the officer contacts the offender in the vehicle. 541 U.S. at 621. The Court pointed out that an officer's stress does not lessen because an arrestee exited the vehicle before the officer initiated contact, nor is the arrestee less likely to lunge for a weapon or attempt to

8

destroy evidence from outside the vehicle. The Court characterized the arrestee as "outside of, but still in control of, the vehicle." 541 U.S. at 621.

Although Officer Fitzpatrick identified Blanco as having driven the vehicle within 10 minutes of the contact initiated by Officers Bryan and Dornes, this case is distinguishable from *Thornton* because of the duration of time and Blanco's distance from the vehicle. It seems the State seeks to characterize Blanco walking from his vehicle as an attempt to fit under the *Thornton* rule. Even so, although the two calls about Blanco were close in time, the officers did not continually see his vehicle or see him exit the vehicle. The significance in *Thornton* was the ability of the arrestee to retrieve a weapon or destroy evidence in the vehicle as an offender next to the vehicle maintained control of it. Neither of those issues apply when Blanco stood, talking to bar patrons, 20 yards from his locked vehicle.

The officers had not maintained watch over Blanco's vehicle, could not determine how long since he had exited, and were unaware whether anyone else had entered it. Blanco was standing 20 yards away talking to bar patrons. He was not a "recent occupant" or "suspect who [was] next to a vehicle" when officers initiated contact with him. Therefore, the search was unreasonable because the applicable warrant exceptions in *Thornton* and *Gant* do not apply.

*Search Incident to Lawful Arrest*

The Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights protect citizens from unreasonable searches and seizures. *State v. Moralez*, 297 Kan. 397, 404, 300 P.3d 1090 (2013). All warrantless searches are per se unreasonable subject to a few specifically established and well-delineated exceptions. *State v. Estrada-Vital*, 302 Kan. 549, 555-56, 356 P.3d 1058 (2015). The exceptions to the warrant requirement include "'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and

9

administrative searches of closely regulated businesses.'" *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012) (quoting *State v. Fitzgerald*, 286 Kan. 1124, 1127, 192 P.3d 171 [2008]).

The officers claimed they conducted the search under the search incident to a lawful arrest warrant exception. In *Gant*, the United States Supreme Court provided that law enforcement may search a vehicle incident to a recent occupant's arrest when: (1) the arrestee is unsecured and within reaching distance of vehicle at the time of the search or (2) it is "'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" 556 U.S. at 343. Because the officers had secured Blanco in the patrol vehicle at the time of the search, only the second condition could apply.

*Interpretations of Reasonable to Believe*

The *Gant* Court held: "[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" 556 Kan. at 343 (quoting *Thornton*, 541 U.S. at 632 [Scalia, J., concurring]). The Court stated that in many cases, like in *Gant*, where officers arrested the recent occupant for a traffic violation, no reasonable belief that the vehicle would contain relevant evidence could exist. 556 U.S. at 343. However, in cases such as drug possession, the "offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." 556 U.S. at 344. Courts have interpreted the "it is reasonable to believe" language in two ways.

Under the first interpretation, some courts have determined that the Supreme Court created a categorical link between the nature of some crimes and the right to search a vehicle. *Ewertz*, 49 Kan. App. 2d at 11. This view accepts that the nature of the crime, despite the facts of the case, conveys whether a reasonable belief that evidence relevant to the crime of arrest exists. Essentially, some crimes will always provide a reasonable belief while others never will.

10

The second interpretation of *Gant* is that the Supreme Court created a standard akin to reasonable suspicion. *Ewertz*, 49 Kan. App. 2d at 12. Reasonable suspicion requires a particularized and articulable basis for believing evidence relevant to the crime of arrest would be in the vehicle. In determining whether reasonable suspicion exists, law enforcement must consider the totality of circumstances—the whole picture. *State v. Toothman*, 267 Kan. 412, ¶ 5, 985 P.2d 701 (1999).

The Kansas Supreme Court has not adopted either *Gant* interpretation. Most recently, in *State v. Torres*, 308 Kan. 476, 485, 421 P.3d 733 (2018), the court declined to accept the categorical link interpretation while leaving it open for future consideration. Although the Supreme Court adopted no interpretation of *Gant*, it opted to review the totality of circumstances as the Court of Appeals had. 308 Kan. at 485.

The State claims that the categorical link interpretation is the most natural reading of *Gant*. This contention stems from the fact that the Supreme Court did not explicitly apply a reasonable suspicion standard, a standard that the courts are familiar with and have explicitly applied before. Blanco claims a categorical approach is not in line with the rationale behind *Gant*, claiming that the Court sought to rectify the "myriad unconstitutional searches" permitted in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). See *Gant*, 556 U.S. at 350-51. In *Belton*, the Court stated, "we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460.

Blanco's argument is more in line with the rationale provided in *Gant*, especially if the purpose was to prevent unconstitutional searches. Before providing the additional exception to the warrant requirement, the *Gant* Court wrote,

11

"Under this broad reading of *Belton*, a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.' Accordingly, we reject this reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. [Citations omitted.]" 556 U.S. at 343.

Before providing the second provision for warrantless searches, the Court acknowledged that it was contrary to *Chimel*. Though the Court provided another means of conducting a warrantless vehicle search, it seems a broad reading of *Gant* under the categorical link interpretation would lead to similar myriad unconstitutional searches much like the broad reading of *Belton*. Ultimately, a categorical link rule without further guidance would permit unconstitutional searches because of confusion over which crimes could be categorized as always providing a reasonable basis. The Supreme Court only applied this rationale to drug possession, a crime that requires physical possession of contraband. At the same time, such a rule could force law enforcement officers to ignore the facts that could amount to reasonable suspicion for a search if the crime of arrest provides no categorical link.

*Categorical Link Interpretation*

One Court of Appeals panel has the right to disagree with a previous panel of the same court. *Graham v. Herring*, 297 Kan. 847, 861, 305 P.3d 585 (2013). In *Ewertz*, another panel of this court found, "like drug offenses, driving under the influence is likely within the category of crimes identified by the *Gant* Court as supplying a basis for searching a vehicle." 49 Kan. App. 2d at 13. However, in his concurring opinion, Judge

Malone wrote, "In many instances, a law enforcement officer investigating a DUI may develop probable cause to arrest the driver without having reason to believe evidence relevant to the crime might be found in the vehicle." 49 Kan. App. 2d at 17.

In *Ewertz*, the officer testified that the odor of alcohol emanated from the vehicle and he saw contraband in plain view when he entered the car to retrieve Ewertz' purse for her. Here, officers smelled the odor of consumed alcohol coming from Blanco and not the vehicle and there was no indication that the officers had any reason to believe relevant evidence may have been in the vehicle.

The facts of *Ewertz* made it easy to assume that DUI falls into the category of crime identified in *Gant*. Yet the facts here demonstrate why Judge Malone hesitated in taking such a leap. Blanco was not in or "next to" the vehicle upon contact with the officers and the officers did not smell alcohol coming from the vehicle before the search. As Blanco argued, with drug possession other contraband is often found, whether it be paraphernalia to assist with drug consumption or weapons. Blanco pointed out that the relationship between drugs and weapons is so great that Kansas has adopted stricter punishments for offenders who carry a firearm to commit a drug felony or possess a firearm in the furtherance of a drug felony. See K.S.A. 2017 Supp. 21-6805(g). Such a connection does not exist with DUI. Blanco also emphasized that the bulk of the evidence in a DUI case is the blood alcohol content rather than circumstantial physical evidence from inside the vehicle. This court has recently decided numerous cases permitting warrantless breath-alcohol testing as a search incident to a lawful DUI arrest. Such a search produces direct evidence of the crime of DUI.

Ultimately, DUI should not fall into the category of crimes that always provides a reasonable belief that relevant evidence of the crime may be in the vehicle. By expanding the category to include DUI, this court risks allowing for further expansion into other crimes with a mere assertion that there was a possibility that evidence of the crime could have been in the vehicle. Further expansion of the category risks continued violations of

arrestees' constitutional rights and fishing expeditions by officers so long as the State can later persuade the courts that the possibility existed. Therefore, this court finds DUIs should not be in the category of crimes that always permit a vehicle search.

*Reasonable Suspicion Interpretation*

The State contends that the officers' search of Blanco's vehicle was permissible because they had reasonable belief that evidence of DUI was in it. The State asserts that Blanco had been seen driving dangerously minutes before making contact with him, he admitted he was wasted, and the officer had no reason to believe he had been in the tavern before contacting him or that he became wasted in the time between the two 911 calls. The State also claims that it was reasonable to believe Blanco was intoxicated when he fled from Officer Fitzpatrick at 10:26 p.m.

Blanco counters by noting that he does not contest the DUI arrest. He contends the facts did not suggest that any evidence was in the vehicle. He smelled of alcohol, not his vehicle, and there was no indication that he had been drinking in his vehicle. He asserts that his breath-alcohol content would have been good evidence that officers could not have obtained by searching the vehicle. At the suppression hearing, Blanco asserted that in a majority of DUI cases, the offender had been drinking before getting into the vehicle and later considered "drunken stupidity" as one reason that somebody may flee and elude officers.

Blanco did not dispute probable cause existed to arrest him for DUI, only that there was reasonable suspicion that evidence of his DUI would be in the vehicle. The facts provide for the reasonable conclusion that any alcohol consumption occurred before driving. Without specifically admitting that he was driving under the influence, Blanco agreed that intoxication could be a reason for fleeing and eluding law enforcement. The State also contends that Blanco consumed alcohol before his encounter with Officer Fitzpatrick and provides no indication that the officers had reason to believe Blanco

14

consumed alcohol in the vehicle. In fact, officers did not assert that belief either; they asserted that a vehicle search was reasonable upon the lawful arrest for any crime, so long as they searched for evidence of the crime of arrest. Considering the totality of circumstances officers had no articulable reasons to believe that evidence of the DUI would be in the vehicle. Therefore, the search was unreasonable under the reasonable suspicion interpretation of *Gant*.

*Good-Faith Exception to the Exclusionary Rule*

The State further contends that even if this court determines the search was unlawful, the evidence is admissible under the good-faith exception to the exclusionary rule. The State claims applying the exclusionary rule will not deter future violations and is not appropriate because the officers conducted the search on objectively reasonable reliance on binding judicial precedent. Blanco counters the State's assertion by raising the issue that no such "settled caselaw" exists.

We review the district court's factual findings under a substantial competent evidence standard and the legal conclusion by a de novo standard. *State v. Daniel*, 291 Kan. 490, 495, 242 P.3d 1186 (2010).

When law enforcement illegally obtains evidence in an unconstitutional search or seizure, the exclusionary rule, a judicially created rule, may act as a safeguard by suppressing evidence. *State v. Powell*, 299 Kan. 690, 694-95, 325 P.3d 1162 (2014). The purpose of the rule is deterrence from future violations. *Powell*, 299 Kan. at 694-95. Courts should only apply the exclusionary rule to further its intended purpose. *Krull*, 480 U.S. at 347. In determining whether application will achieve the rule's deterrent effect, the court weighs the likelihood of the deterrence against the costs of withholding reliable evidence. 480 U.S. at 347.

In *State v. Karson*, 44 Kan. App. 2d 306, 314, 235 P.3d 1260 (2010), *aff'd* 297 Kan. 634, 304 P.3d 317 (2013), this court held the exclusionary rule did not apply to evidence obtained in an unlawful search when officers acted in reasonable reliance on settled caselaw even if a later United States Supreme Court decision deems the search invalid. Here, caselaw is not settled. As addressed by both parties, different states and different federal districts have split between the two *Gant* interpretations. However, neither the Kansas Supreme Court nor the Kansas Court of Appeals has adopted a *Gant* interpretation. Because of this, the good-faith exception cannot apply. The exception is based on reasonable reliance on settled caselaw that supports the constitutionality of the search at the time and requires the search to have been later deemed unconstitutional based on a United States Supreme Court decision. Therefore, the good-faith exception is not applicable.

Additionally, the officers' legal explanations showed a faulty understanding of the two interpretations of *Gant*. Officer Bryan testified, "I can look specifically for elements related directly to the crime that [Blanco] was arrested for." Officer Dornes explained that he looked for "fruits of the crime, the DUI, open alcoholic beverages, anything that would indicate that [Blanco] had been consuming alcohol that night that would contribute to the DUI arrest." Officer Dornes also testified it was "a search incident to the arrest, one of the exceptions to a search warrant and gives me probable cause to search the vehicle for proof of any crime." He also stated that under *Gant*, he could recover "fruits of being drunk" or evidence "[r]elated to the crime that [he] arrested [Blanco] for." Although Officer Dornes concluded that he could only search for evidence of the DUI here, both officers testified that as long as they searched for evidence of the crime of arrest, the search was lawful. Which, to a point is accurate, but the explanation lacks an understanding of limitations of searches based on the "reasonable to believe" language of *Gant*, whether it be based on a categorical link or the need for reasonable suspicion.

The belief that *Gant* provided a rule that officers could search any vehicle so long as they searched only for evidence of the crime of arrest will lead to more

16

unconstitutional searches based on officers' interpretations of caselaw. Also, expanding the good-faith exception to include officers' interpretations of unsettled caselaw would be even more problematic based on Blanco's location at the time of the initial contact with officers. The district court correctly concluded that the good-faith exception could not apply here because the officers did not reasonably rely on later invalidated appellate precedent. The court also appropriately determined that the exclusionary rule would serve its deterrent purpose in preventing the officers involved and others from making the same mistake in the future.

Affirmed.

* * *

MALONE, J., concurring: I concur in the result.